WINFIELD DENTON et al., Appellants v. A. H. McINNIS, Respondent.

St. Louis Court of Appeals, November 5, 1900.

1. **Contract, Construction of:** TIME, ESSENCE OF: UNREASONABLE DELAY. Time being the essence of the contract, in the case at bar, to delay shipments for fourteen days, as the plaintiffs did, was as a matter of law, an unreasonable delay, violative of the contract, and authorized defendant to repudiate it.

2. ———: CONDITION PRECEDENT: EVIDENCE. In the case at bar, the ability of plaintiff to obtain cars in which to make shipment is nowhere incorporated in the contract as a condition precedent to its obligations to make shipments.

3. Contract, Acceptance of: MUTUAL ASSENT: EVIDENCE. In the absence of evidence as to the unconditional acceptance of an order as to shipments on the part of plaintiff, as demanded by defendant, it can not be said that the minds of the parties to a contract met, or that there was a "mutual assent to the same thing in the same sense."

Appeal from the St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft* Judge.

AFFIRMED.

*Frank K. Ryan* for appellants.

(1) The court below erred in holding as matters of law that the order of May 11 was not to be shipped as promptly as proper cars could be obtained; that appellants did not have the rest of the month to fill the order of May 14, and that they were bound to ship both lots of corn immediately, regardless of the course of dealing and the correspondence between them and the respondent. (2) There was nothing inconsistent in the letter of appellants with what had gone before in the telegrams. And, obviously, this letter did not call for any further communication from respondent, because the conditions added in the letter were merely formal and according to the usual mode of dealing between appellants and respondent. Express notice of acceptance is not essential, when apparently not contemplated and where it is shown in some other way. Robinson v. Topley, 48 Mo. App. 239; Lungstrass v. German Ins. Co., 48 Mo. 201; Robinson v. Railway, 75 Mo. 494. (3) The said statement in respondent's letter of May 30 is only one of the many facts contained in the record herein going to show that he was by his conduct bound by a certain course of dealing with the appellants, and that they had a right to show what reasonable time for shipment was thereunder.

Allen v. Chouteau, 102 Mo. App. 323; Kendall Boot & Shoe Company v. Bain, 46 Mo. App. 593.

*R. P. Williams* for respondent.

(1)  Before an offer to purchase or sell becomes completed and binding upon both parties there must be an unequivocal unconditional acceptance without any variance between it and the offer.   Strange v. Crowley, 91 Mo. 289; Taylor v. Von Schreader, 107 Mo. 206; Sawyer v. Brossart, 67 Iowa 678; Gilbert v. Baxter, 71 Iowa 327.   (2)   The acceptance of an offer coupled with a modification is in law a rejection of the offer, and becomes in its modified form a new proposal, which requires acceptance in its turn in order to constitute a contract.   Shickle v. Chouteau, 10 Mo. App. 241; Wire Co. v. Broderick, 12 Mo. App. 378.   (3)   "The assent must, in order to constitute a valid contract, be mutual and intended to bind both sides.   It must also co-exist at the same moment of time.   A mere proposal by one man obviously constitutes no bargain of itself.   It must be accepted by another and this acceptance must be unconditional.   If a condition be affixed by a party to whom the offer is made, or any modification or change in the offer be requested, this constitutes in law a rejection of the offer."   1 Benjamin on Sales, sec. 47; Story on Sales, sec. 136; Johnson v. Mount Hope Iron Co., 53 Maine 23; Wire Co. v. Broderick, 12 Mo. App. 278; Eads v. Carondelet, 42 Mo. 117.   (4)  "In contracts of merchants time is of the essence.   The time of shipment is the usual and convenient means of fixing the probable time of arrival, with a view of providing funds to pay for the goods or by fulfilling contracts with third parties.   A statement descriptive of the subject-matter or of some material incident such as the time or place of shipment is ordinarily to be regarded as a warranty in the

sense in which that term is used in insurance or maritime law, that is to say, a condition precedent upon the failure or non-performance of which the party aggrieved may repudiate the whole contract." Rolling Mill v. Rhodes, 121 U. S. 260; Norrington v. Wright, 115 U. S. 188-203; Filley v. Pope, 115 U. S. 213; Roper v. Porter, 102 N. Y. 356; Romell v. Wingate, 103 Mass. 327. (5) The plaintiffs undertake in this case to establish the damages by showing a sale of the corn in question, such sale being made in Mobile, Alabama. The place of delivery being Meridian, Mississippi, and it being further shown that this place afforded a market for corn, such sale should have taken place in Meridian, before the same could be used to establish the damages of the plaintiffs. Rickey v. Tenbrook, 63 Mo. 565.

BLAND, P. J.—This suit is for damages for breach of two alleged contracts for the sale of corn. The plaintiffs did business in Leavenworth, Kansas, the defendant in Meridian, Mississippi; they had done business with each other for several years prior to 1898, when the transactions were had out out of which this suit arose. It is claimed that there were two contracts, both of which it is alleged the defendant broke, one dated May 11, the other May 14, 1898. The one of May 11 is evidenced by the following telegrams, to-wit:

"Meridian, Miss., May 10, 1898.
Denton Bros., Leavenworth, Kan.:

"Wire early to-morrow and let me know when I can count on your filling contract of April 29th. Quote 2 white corn if offering.

"A. H. McInnis."

On the following day the plaintiffs wired defendant as follows:

"A. H. McInnis, Meridian, Miss.:

"Your corn all shipped. Offer 2 white corn 36 1-2. Prompt reply. Denton Bros."

The defendant made the following reply to this telegram on the same day:

"Denton Bros.:

"Enter 5,000 bu. 2 white corn; prefer slow and regular shipment, beginning last of this week.

"A. H. McInnis."

On the same day plaintiffs sent the defendant the following letter, dated Leavenworth, Kansas, May 11, 1898:

"A. H. McInnis, Meridian, Miss.:

"Dear Sir:—We confirm sale to you to-day by wire 5,000 bu. 2 white corn at 36 1-2 to be shipped to you free on board cars at East St. Louis, care of M. & O., Leavenworth weights and inspection. Will ship as promptly as proper cars can be obtained.

"Soliciting your further orders, we are,

"Very truly, Denton Bros."

On May 14th defendant wired plaintiff as follows: "Let corn come. Quote 5,000 bushels 2 white corn. State when could ship." To this plaintiffs on same day wired defendant: "Offer 2 white corn 36 1-2, May shipment." On same day defendant wired plaintiffs: "Accept 5,000 bushels 2 white corn provided you ship gradually." In answer to this plaintiffs on the same day sent defendant the following letter:

"Leavenworth, Kan., May 14, 1898.

"A. H. McInnis, Esq., Meridian, Miss.

"Dear Sir:—We confirm sale to you to-day by wire 5,000 bushels 2 white corn at 36 1-2 to be shipped to you free on board cars at East St. Louis care of M. & O. Leavenworth

Denton v. McInnis.

weights and inspection. Will ship as promptly as proper cars can be obtained.

"Soliciting your further orders, we remain,

"Yours truly, Denton Bros."

Nothing further passed between the parties until May 23d, when defendant wired plaintiffs as follows: "I hereby cancel order of May 11th." On same day plaintiffs answered by wire as follows: "Your cancellation too late. Corn shipped. Will expect you to take it." To this on same day defendant replied by wire: "If corn had been shipped Saturday would have received invoice to-day; the order is cancelled. Do not ship." On the same day plaintiffs sent defendant the following letter:

"Leavenworth, Kan., May 23, 1898.

"A. H. McInnis, Esq., Meridian, Miss.

"Dear Sir: We have your message in answer to our message saying your corn is shipped. You state that if corn had been shipped Saturday you would have received invoices to-day, and therefore refuse to accept shipments. You seem to know more about our business than we do. Wish to state that if your corn had been loaded out Saturday, that you would not have received invoice to-day unless the car had been loaded out on Saturday before 11 a. m., so that you can readily see that you do not know what you are talking about.

"As we have been somewhat behind in our orders on account of the heavy rains in this section, our elevator ran all day yesterday in order to get out the late orders, and we are somewhat surprised at your action in refusing to accept this corn. We will apply the corn shipped on your sale of the 11th, on your sale of the 14th.

"Yours truly, Denton Bros."

Denton v. McInnis.

On May 24th defendant wrote plaintiff as follows:

"Meridian, Miss., May 26th.

"Denton Bros., Leavenworth, Kansas.

"Gentlemen:—In reply to your telegram of yesterday in regard to my cancellation was received too late. I wired you from Waynesboro not to ship the corn purchased from you on May 11th. I am out of corn and probably will have none before Friday or Saturday. I certainly expected to receive some from you last week. Your delay last year caused me very serious losses. I do not propose to stand the same thing this season.

"Yours truly,        Albert H. McInnis."

The next communication was from defendant to plaintiffs and is dated May 26th, as follows:

"Meridian, Miss., May 26, 1898.

"Denton Bros., Leavenworth, Kan.

"My acceptance of your quotation of May 14th specified that shipments must not be bunched. Instruct railroad at East St. Louis to hold shipment forwarding one car daily, or instruct me that you will pay my demurrage bill. Answer.

"A. H. McInnis."

On the same day plaintiffs wired defendant as follows in reply to defendant's telegram of May 26th, to-wit:

"A. H. McInnis, Meridian, Miss.

"Shipment made on 23d to fill sale of 11th before your wire was received. Will request M. & O. to hold.

"Denton Bros."

On May 26th plaintiffs sent defendant the following letter :

"Leavenworth, Kan., May 26, 1898.

"A. H. McInnis, Meridian, Miss.

"Dear Sir:—We are in receipt of your somewhat lengthy telegram reading as follows: 'My acceptance of your

quotation May 14th specified that shipments must not be bunched. Instruct railroad at East St. Louis to hold shipment, forwarding one car daily, or telegraph me that you will pay my demurrage bill. Answer,      A. H. McInnis.'

"We replied: 'Shipment made the 23d to fill sale of 11th before your wire was received. Will request M. & O. to hold.                         Denton Bros.'

"Your several telegrams in reference to this corn just came to our notice as our Mr. Dentons have been in Chicago over a week and have just returned. It is unnecessary to go into details; it is true that you made a request in your telegram of the 11th reading as follows:

" 'Enter absolute alienate—prefer slow and regular shipment beginning last of this week.      A. H. McInnis.'

"You are no doubt aware that we had such heavy rains that it delayed shipment of corn; this caused a delay in your first shipment which was not shipped until the 23d. We shipped it, however, just as quickly as we could move the corn. On the 14th we offered you No. 2 white corn for May shipment, and you replied saying:      'Accept 5,000 bushels provided we shipped gradually.' This we will do by shipping one car per day until the sale is filled. Had we had good weather, your first shipment would have gone at least four or five days earlier, but as the rains were so heavy, it delayed the railroads as well as the shippers in making the delivery.

"We must admit that we are somewhat surprised at the tone of your telegram, especially the one which says: 'I hereby cancel order of May 11th,' before ascertaining if the corn had been loaded out, which it had been before receiving your wire. We hardly think that you would take advantage of the decline in the market; you certainly know that if you buy corn from us you get it no matter how high corn goes af-

ter purchase is made. We are not responsible for the weather conditions, nor the movements of the railroads. Some of the corn we shipped you had been held here over two weeks on side-tracks before being delivered to us, because the tracks were in such condition the railroads could not handle it.

"Yours truly,                    Denton Bros."

On May 29th defendant sent the following message by wire to plaintiffs: "You fail to comply with conditions of purchase of either 11th or 14th. In your letter of 23d you say you will apply shipment that day to purchase of 14th. This lot was bought provided shipment was scattered. I will not pay for corn invoiced 23d unless you divert all corn shipped here subsequent to this order to some other point.

"A. H. McInnis."

On the morning of the 30th defendant wired the following: "Unless I have an answer replying to my last night's telegram early to-morrow, I return your draft of 23d.

"A. H. McInnis."

On the same day plaintiffs wrote defendant as follows:

"Leavenworth, Kan., May 30, 1898.

"A. H. McInnis, Esq., Meridian, Miss.

"Dear Sir:—We are in receipt of your night message of the 29th saying we fail to comply with the conditions of purchase of either 11th or 14th. We wish to call your attention to your order of the 11th which reads as follows: 'Enter 5,000 bushels 2 white corn; prefer slow and regular shipment beginning last of this week.' We did not agree to give you slow and regular shipment. You simply gave us your preference, which cuts no figure in this trade. There was no proviso about shipment being scattered. On the 14th we received your telegram saying: 'Let corn come. Quote absolute alienate (the two last words translated mean No. 2 white corn). State when could ship.' We quoted you naming May

shipment which you accepted provided we could ship gradually and this we are doing by shipping one car daily until the contract is filled.   You can do as you like about paying us for the corn.    If you feel disposed to test the matter, we are ready.   We dislike very much to have trouble with you as our business relations with you have been of the pleasantest; but when we are doing the best we can, we do not care to be imposed upon.   We think that after you consider this matter, you will see that you are wrong.   Had we waited an unreasonable time, it might cut some figure.   You know well enough that no matter how high corn goes after purchase is made, you get it even if there is a delay for which we are not responsible.   We certainly expect you to take the corn, especially where there was no delay even if the markets have declined.   Yours truly,                         Denton Bros."

On the same day defendant wrote plaintiffs as follows:

"Meridian, Miss., May 30, 1898.

"Messrs. Denton Bros., Leavenworth, Kan.

"I have yours of the 23d and 26th.   I wired you from Waynesboro last Monday that I considered the last week, that is the week beginning the 15th and ending the 22d, the utmost time that you could claim for filling my order of the 11th. Had you shipped the corn within this time I would have gotten rid of it without trouble.   I wired you that I would not use the corn but rejected the lot.

"Your letter of the 23d which did not contain invoice for the cars you claim were shipped then, but which reached this place 24 hours after your letter of the 23d did, show that you accepted this rejection, for you say you are surprised at my refusal to refuse this shipment, but that you will apply it to my purchase of the 14th.   Your letter of the 26th reached here Saturday evening, but was not read by me until Sunday morning.   I don't think it worth while to discuss with you

my right to reject the first shipment on account of this delay. Your letter of the 23d clearly shows that you acquiesced in this rejection. We come now to your letter of the 26th, and you claim that you will still ship my purchase of the 11th. You will do no such thing, at least if you do, I will reject the whole 10,000 bushels. I am going to wire you again to-night offering to receive 5,000 purchased on the 23d, provided you divert all subsequent shipments. If you are not willing to do this, I reject the whole lot, and I base my rejection on these grounds. Your letter of the 23d acknowledged the receipt of the two telegrams of cancellations from me on that date, of my order of the 11th, and stated that you will apply shipment being made that day to my purchase of the 14th, and your invoice of the 23d specifies that the corn is shipped on my order of the 14th. My order of the 14th distinctly stated that shipments were to be scattered and I will reject this shipment because the whole lot was shipped in one day. I lost at least $2,000 last season on your holding and unreasonably delaying shipments to me, and I am not going to take this same medicine again.

"Yours truly,<br>"A. H. McInnis."

On May 31st defendant wired plaintiffs as follows: "I reject your shipment of 23d. Take steps you think necessary for your protection."

On the order of May 11th plaintiffs shipped one car of corn on May 26th; two cars on May 27th; one car on May 28th; one car on May 30th, and on May 31st one car. The shipment of May 23d was in seven cars; two or three of these reached Meridian; the other cars with all the shipments made after the 23d were deflected to Mobile, Alabama, by direction of the plaintiff. The entire shipment of 5,000 bushels of May 23d were included in one draft on defendant, with bill

of ladings attached, so that no part of the shipment could be obtained by the defendant without paying for the whole. It was claimed by plaintiffs that early in the spring of 1898 the father of defendant acting for him agreed that plaintiffs should have the right to delay shipments on future orders until they could have corn shipped in from their elevators throughout Kansas and Nebraska to Leavenworth. This was denied by defendant's father, and defendant testified that no such understanding or agreement was had between himself and plaintiffs. The following stipulation was read in evidence:

"It is admitted in evidence, subject to objections for relevancy and materiality, that all the corn sued for was sold by plaintiffs F. O. B. Mobile, of which 3,928 32-100 bushels were sold at 40 1-4 cents per bushel and 5,982 8-100 bushels were sold at 40 1-2 cents per bushel; producing an aggregate amount of $4,004.01, and that the freight on these two lots was from Leavenworth to East Saint Louis $717.39, and from East Saint Louis to Mobile $721.50, total for freights of $1,438.89, leaving $2,568.12 as the proceeds of said corn after deducting said freight. That the aggregate amount of said corn 9,910 41-100 bushels, invoiced at 36 1-2 cents per bushel, is $3,617.43, from which deducting freight to East St. Louis, $717.39, leaves $2,900.04 as the net invoice price of said corn, and which is $334.92 more than plaintiffs realized for same. It is agreed that one-half of this amount, or $167.46 is the difference between the invoice price and the net sum realized on each of the 5,000 bushels of corn; further that such prices for corn F. O. B. Mobile were fair market prices for said corn at said place."

The evidence is that during the latter part of May, 1898, No. 2 white corn was worth at East St. Louis, 36 1-4 cents per bushel. The plaintiffs took no steps to stop any of the

corn at East St. Louis, nor to a₁₀w the defendant to pay for
and receive one car of corn at a time after it arrived at Merid-
ian, but sent way-bills with draft attached for the whole of the
shipment that arrived there.    The defendant testified that on
account of the delay of shipment on his order of May 11th
he was compelled to buy corn elsewhere at 1-2 cents advance
to fill orders.    The issues were submitted to the court sitting
as a jury, who on behalf of plaintiffs gave the following in-
structions:

1.    "The court sitting as a jury instructs that the plain-
tiffs were not required to give the defendant any notice of the
resale of the corn."

2.    "The court sitting as a jury instructs that it is im-
material if the plaintiffs undertook to fill defendant's second
order with corn that they had originally intended for de-
fendant's first order, provided that otherwise plaintiffs com-
plied with their part of the contract in filling said second
order."

3.    "The court sitting as a jury instructs that it was
not necessary for plaintiffs to sell the corn refused by the
defendant in Meridian, and that such sale was properly
made in Mobile, if it appears in evidence that Mobile was the
best market for such a sale."

4.    "The court sitting as a jury instructs that it is im-
material if the plaintiffs filled the first order of defendant
with other corn than that which they originally intended to
fill said order, provided that in other respects they fully
complied with their part of the contract in filling said first
order."

The court refused the following instructions asked by
plaintiffs:

5.    "The court sitting as a jury instructs that if it
appears from the evidence that the plaintiffs shipped the first

lot of corn as promptly as proper cars could be obtained, and that plaintiffs shipped the second lot of corn during the month of May, then the verdict and judgment herein must be for the plaintiffs."

6. "The court sitting as a jury instructs that if it is held that the plaintiffs did not have the month of May to fill the second contract, and that the shipment of the first was not to be "as promptly as cars can be obtained," then by the terms of the contract between the parties in this case, it was not incumbent upon the plaintiffs to deliver the corn called for at any specified time, but that it was their duty to deliver such corn within a reasonable time, and that what is a reasonable time in this case depends upon the course of dealing between the parties, and the correspondence between plaintiffs and defendant in evidence in this case."

No instructions were asked or given on behalf of defendant. The issues were found for and judgment was entered in favor of defendant. Plaintiffs appealed. No exceptions were saved as to the admission or rejection of testimony by the court.

1. Refused instruction number 5 goes outside of the contract of May 11th to find an excuse for nondelivery of the corn as requested by the defendant. Defendant's acceptance of plaintiffs offer of May 11th of 5,000 bushels of corn, was conditioned on slow and regular shipments beginning last of the week. The language of the telegram accepting the offer "prefer slow and regular shipments, beginning last of this week," was a notification to plaintiffs that the offer was accepted upon condition that the shipments would be made as therein requested. The answer of appellants that they would "ship as promptly as proper cars can be obtained," must be construed either as a rejection of the request of slow and regular shipment, beginning last of the week, or that plain-

tiffs would substantially comply with the request. If construed as a rejection of the request as to shipment, then there was *no* contract. Eads v. City of Carondelet, 42 Mo. 113; Strange v. Crowley, 91 Mo. 289; Taylor v. Von Schreader, 107 Mo. 206; Eggler v. Nesbit, 122 Mo. 677; Lancaster v. Elliott, 28 Mo. App. 86; 1 Benjamin on Sales, sec. 47, note 2. If construed as an acceptance of the order as to shipment, then a shipment on the twenty-third day of May was *not* a substantial compliance with the contract as time of shipment was of the essence of the contract, and the delay authorized the defendant to repudiate the contract. Norrington v. Wright, 115 U. S. 188; Cleveland Rolling Mills v. Rhodes, 121 U. S. 255; Filley v. Pope, 115 U. S. 213; Romell v. Wingate, 103 Mass. 327. The contention of appellants that defendant's telegram of May 14th to plaintiffs to "let corn come," was an order for the shipment of the entire lot at one time—is not sustained by the facts. On the 11th of May defendant requested shipment to begin last of the week. The telegram of the 14th to "let corn come," in the light of all the circumstances should be construed as a hurry up order, to begin shipments as per original order.

Refused instruction number 6 clearly misstates the law. Time being of the essence of the contract it was the bounden duty of appellants, if it accepted the defendant's order of May 14th accepting 5,000 bushels of corn, provided the shipments were made gradually, was to begin within a reasonable time. Time being of the essence of this contract to delay shipments for fourteen days, as the plaintiffs did, was as a matter of law, an unreasonable delay, violative of the contract, and authorized defendant to repudiate it. The ability of plaintiffs to obtain cars in which to make shipments is nowhere incorporated in the contract as a condition precedent to its obligations to make shipments. An instruc-

tion predicated on this condition, as was refused instruction number 6, was outside the evidence, and therefore clearly erroneous.

12. It requires a stretch of the imagination or a twisting and warping of the correspondence by telegrams and letters between the parties to make out either the contract of May 11th, or of May 14th. In both instances there is not an unconditional acceptance of the defendant's orders for corn on the terms as to shipments he requested and demanded. In the absence of such acceptances it can not be said that the minds of the parties met, or that there was a "mutual, assent to the same thing in the same sense," which must have been the case to consumate the contracts. See authorities cited under paragraph one.

The judgment is affirmed. All concur. Judge *Biggs* in result.