GONA LANCASTER, Appellant, v. HENRY ELLIOTT ET AL., Respondents.

St. Louis Court of Appeals, November 22, 1887.

1. CONTRACT—PROPOSAL AND ACCEPTANCE—QUESTION OF LAW.—What acts or words constitute an acceptance of a proposal, where such acts or words are unequivocal, is a question of law.

2. ——— An unconditional acceptance of an unconditional offer constitutes an agreement the moment of the acceptance, although the acceptance be not known to the person making the offer.

3. ——— An acceptance, to have the effect of consummating an agreement, must be shown by some overt act; a mere uncommunicated assent does not have this effect.

4. ——— A proposal to relinquish certain rights upon the payment of a certain sum of money is not unconditionally accepted by the deposit of the sum in bank, it still remaining under the depositor's control, and a writing of the word "accepted" on the proposal, the acceptor retaining the same.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded.*

W. C. MARSHALL, for the appellant: A written contract, to be binding, must be delivered, and takes effect only from delivery. *Bunsen v. Huntington*, 21 Mich. 415. This is true, whether the instrument be under seal or not, and whether it be a deed, a promissory note, or any other written contract. 4 Kent Com. (9 Ed.)

*454; Smith .Cont. [ 2 Eng. Ed.] 6; 1 Chitt. Cont. [11 Am. Ed.] 4; *Hawkes v. Pike,* 105 Mass. 560; *Watkins v. Nash,* Law Rep. 20 Eq. 261; *McPherson v. Meek,* 30 Mo. 347; *Williams v. Williams,* 67 Mo. 665; *Carter v. McClintock,* 29 Mo. 464. To constitute delivery, the writing must, in some way, pass beyond the control of the maker. *Johnson v. Farley,* 45 N. H. 505; *Renard v. Walker,* 39 Ill. 413; *Cook v. Brown,* 34 N. H. 460; *Canfield v. Ives,* 18 Pick. 253; *Rutledge v. Montgomery,* 30 Ga. 899. Moreover, there must be an acceptance of the delivery, express or implied. *Johnson v. Farley,* 45 N. H. 505; *Curtis v. Gorman,* 19 Ill. 141; *Carey v. Dennis,* 13 Md. 1; *State v. Oden,* 2 Har.. & J. 108. To constitute an acceptance the acceptor must do some- overt act. *Conklin v. Cabanne,* 9 Mo. App. 579. "An offer and acceptance constitute a bargain. The acceptance, however, must be unconditional." *Stotesburg v. Massengale,* 13 Mo. App. 226. "An acceptance qualified with a condition does not bind the other party to the correspondence." *Falls Wire Co. v. Broderick,* 12 Mo. App. 378; *Breicheisen v. Coffey,* 15 Mo. App. 84.

E. P. JOHNSON, for the respondents: The acceptance was evidenced by an endorsement thereof on the offer and a deposit of the money to be paid thereunder. *Wiggins Ferry Co. v. Railroad,* 73 Mo. 389. And that notice of the acceptance was not received by the offerer is immaterial. *Insurance Co. v. Grant,* 4 Ex. D. 216; *Howard v. Daly,* 61 N. Y. 365.

LEWIS, P. J., delivered the opinion of the court.

This action was brought upon the following bond : "Know all men by these presents that we, Ida M. Lancaster, as principal, and Henry Elliott and Henry Elliott, Jr., as sureties, are held and firmly bound unto Gona Lancaster, in the sum of one thousand dollars, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, and administrators jointly and severally by these presents. Sealed with our seals

and dated this 16th day of July, 1884. The condition of the above obligation is such, that whereas, on the 17th day of July, 1884, a decree was rendered in cause number 64,570, in the circuit court, city of St. Louis; now if said Ida M. Lancaster shall hereafter well and truly preserve and perform, upon her part, said decree in all respects, then this obligation to be void, otherwise of full force and virtue; and the damages to said Gona, by reason of any breach thereof, are agreed to be liquidated and adjusted at the amount of this bond."

That part of the decree which bears upon the present controversy is as follows: "And by consent of said parties it is further ordered and adjudged by the court that the plaintiff recover of the defendant the sum of nine hundred and fifty dollars, as and for alimony in gross; that said defendant pay to Messrs. Jones and Delano the sum of one hundred and fifty dollars as and for attorneys' fee, and to Luke Hite the sum of twenty-five dollars as and for attorney's fee. And, by consent of said parties, it is further ordered and adjudged by the court that the defendant pay for the maintenance of Gladys Lancaster, the minor child of said parties, on the first Saturday of each month hereafter, to the said plaintiff, at the East St. Louis Bank, in East St. Louis, Ill., the sum of thirty dollars a month, the first payment being made this day; and that should said thirty dollars a month, or any part thereof, be diverted from the maintenance of said child, at any time hereafter, the said allowance shall cease. It is further ordered by the court that the plaintiff shall have the custody of said child, but that said child shall not be carried to or kept in East St. Louis, Illinois, before the first of October, 1884, and that the defendant shall have the right and privilege to visit and see the said child on Tuesday, Thursday, and Saturday of each week, for the space of two hours on each of said days, during the afternoon, at the house of the plaintiff."

The breach of the bond is stated in the petition to consist of this: "That since, to-wit, the first day of

May, 1885, she, the said Ida M. Lancaster, has not only wholly refused to allow the plaintiff to visit and see their said child, Gladys, for two hours on Tuesday, Thursday, and Saturday of each week, during the afternoon at the house of the plaintiff, but has absolutely refused to allow the plaintiff to see his said child at any time or place, although often requested so to do."

The answer admits the execution of the bond, and denies all other facts stated in the petition, and sets up the following affirmative defences : (1) That the bond was executed without consideration. (2) That the plaintiff forfeited whatever rights he had under the terms of the bond by failure to pay the alimony in gross, and monthly alimony decreed. (3) That a new agreement was entered into between the plaintiff and the defendant, Ida Lancaster, September 30, 1885, in reference to the time and manner in which the plaintiff might visit his child, Gladys, by which new agreement the provisions of the bond were superseded and cancelled.

The cause was tried before a jury who, at the close of the plaintiff's evidence, were instructed by the court that, under the evidence, the plaintiff was not entitled to recover.

The plaintiff gave evidence tending to show breaches of the bond, the execution of which was admitted, and which imports a consideration. Rev. Stat., sect. 663. Upon such evidence he was entitled to go to the jury, unless it affirmatively appears, by testimony offered on his behalf, that the agreement contained in the bond was superseded by some valid new agreement, as claimed in the answer.

Upon that subject the evidence pertinent to the question before us is as follows : The plaintiff was not permitted to see the child at the places and intervals mentioned in the decree, and thereupon, in March, 1885, ceased paying the monthly allowances provided for the support of the child by the decree. In October, 1885, he received the following written communication from the defendant, Ida :

"East St. Louis, October 13, 1885.

" To Gona Lancaster :

" I propose that any rights you may have under the decree of the circuit court of the city of St. Louis, state of Missouri, granting me a divorce, be relinquished in the following particulars, viz.: (1) That the bond of one thousand dollars, given by me for the observance of said decree, be withdrawn from the files of the court and cancelled. (2) That I shall not be required to write to you unless the child, Gladys, is in bad health. (3) That you shall see the child, Gladys, two hours each day in the afternoon on three days of each week, Tuesdays, Thursdays, and Saturdays—enter the front door and go into the reception-room in whatever house the said Ida M. Lancaster may live or reside. (4) That you at once pay all back monthly allowances provided by the said decree, and that the said monthly allowances still be continued. This stipulation to be put on file as part of the decree in the said cause ; and in consideration thereof I revoke my right to proceed against you for disregarding the terms of said decree.

"IDA M. LANCASTER."

Upon receipt of this offer the plaintiff wrote below the signature of the defendant, Ida, "accepted, Gona Lancaster," and deposited in the East St. Louis bank a check for two hundred and ten dollars, for the back alimony, and then went to the house where the defendant Ida resided, for the purpose (it would seem) of delivering the paper to her. The paper was never delivered because the plaintiff was refused entrance to the house.

The trial court, by non-suiting the plaintiff, necessarily decided that the proposal of October 13, 1885, became a valid contract between the plaintiff and the defendant Ida, owing to the plaintiff's action as above detailed, and that such is the legal effect of the plaintiff's conduct, as hereinabove mentioned, and hereinafter more fully detailed in his own testimony. The

court, furthermore, necessarily decided that the contract thus entered into superseded the provisions of the bond sued upon, and rendered them unenforceable. The correctness of that ruling is, substantially, the only question presented for our consideration by this appeal.

As to what was done by the plaintiff upon the receipt of the proposal, bearing date October 13, 1885, the testimony is not quite clear, there being a conflict, as regards some of the details, between the testimony of the plaintiff and that of the cashier of the bank, one of his witnesses. The plaintiff himself states the facts as follows:

"The agreement [referring to the proposal of August 13] called for me to pay all back alimony up to that date, and I went to East St. Louis to the bank and deposited a check for two hundred and ten dollars back alimony, and signed the agreement which she had sent; took a receipt at the bank for the money, and went to her mother's house; her mother came to the door; the first thing she said, 'you shall not see the baby;' I said, 'I have got some papers for Mrs. Lancaster;' and with that she shut the door in my face, and I did not get to see anything."

"Q. Is that the last time you tried to see the child? A. Yes, sir."

On cross-examination, the plaintiff made the following statements:

"Q. You instructed the cashier, at the time you made the deposit, not to pass it to Mrs. Lancaster's credit, didn't you? A. No, sir, I certainly did not. When I came back to the bank, though, I asked him if he had passed the money to Mrs. Lancaster's credit, and I told him I would like to withdraw it, as there was a misunderstanding, and when I came back he gave me the check."

"Q. You did not pay that money in there absolutely; you only had it there conditionally? A. No, sir, I never put any direction on it. I put it to her

credit and got a receipt, and gave it back when I came back."

"Q. Now, I want to ask you, didn't you put the money there in good faith, to be paid to this lady? A. I certainly did. I put it there on a written contract, and thought the contract was good, or I would not have went there with the money."

The defendant contends that this testimony establishes, as a matter of law, that a new agreement, superseding the bond sued on, was entered into between her and the plaintiff. The plaintiff controverts this position, insisting that the proposal made to him by the defendant never ripened into an agreement by any act of acceptance on his part.

The interpretation of a contract in writing is always a matter of law for determination by the court, and equally so, upon like principles, is the question what. acts or words, in nearly every case, will suffice to constitute an acceptance, by one party, of a proposal submitted by the other, so that a contract or agreement thereby becomes matured. *Falls Wire Manufacturing Company v. Broderick*, 12 Mo. App. 378. Important distinctions frequently arise between conditional and unconditional proposals, or acceptances, but there is no need to discuss them here, since the proposal, in this case, was coupled with no conditions other than the terms expressed on its face, and the alleged acceptance, if there was one, was alike unconditional and final. The real and only question is, whether, on the part of the plaintiff, there was any acceptance at all of the proposal tendered to him by the defendant.

The acceptance of a proposal just as it is made evinces, without anything more, that "meeting of the minds," which is essential to the formation of every contract. But it does not, therefore, follow, conversely, that, whenever two persons think, or intend the same thing, in a matter which might be a basis for contractual relations, there results a contract or agreement in law. A proposal being made, the most direct form of accept-

ance which will develop, at the same time, a meeting of the minds and the formation of a lawful contract, is the simple declaration in words to that effect, whether orally or in writing. If no such declaration is made, the law, nevertheless, sometimes finds in the acts of the person to whom the proposal was offered an acceptance no less binding and conclusive. But in all such cases, certain conditions must be present, without which no acceptance or contract can be inferred.

*Coleman v. Roberts* (1 Mo. 97) was an action for services rendered in the raising and taking care of the defendant's child. The defence was, that the services were to be a gratuity, and the court was asked to instruct that, if such was the intention of the parties, the jury should find for the defendant. This was refused, and the Supreme Court approved the refusal, saying that "the bare intention, existing in the breasts of both, and communicated by neither, would make no agreement in law." In *Conklin v. Cabanne* (9 Mo. App. 579) this court held that, "where one writes to another, requiring an answer as to whether the latter will accept certain employment at a certain sum, a voluntary compliance with the terms, without the writer's knowledge, will not amount to an acceptance by the latter, where the letter remains unanswered." But in *Stotesburg v. Massengale* (13 Mo. App. 221), where a letter was sent from the defendant to the plaintiffs, proposing certain brokerage transactions in cotton, the trial court instructed that, "if the letter of November 27th was approved of by defendant Massengale, and sent to plaintiffs, and they, within a reasonable time thereafter, made contracts on the faith of the statements contained in said letter, then they will be held to have accepted the proposition made in said letter, and the defendant, Massengale, is liable," etc. The instruction was approved by this court, and the judgment affirmed. This decision may be considered as affirming the proposition that there may be an effectual and binding acceptance by an act which is not communicated or known to the party who made the proposal.

Said our Supreme Court in *Lungstrass v. Insurance Company* (48 Mo. 204), "any appropriate act which accepts the terms as they were intended to be accepted, so as to bind the acceptor, just as clearly evidences the concurrence of the parties, the bringing of their minds together, as a formal letter of acceptance." The judgment was reversed because of an instruction that the contract was created by the *assent* of the parties; not requiring, further, that such assent should have been manifested by notice given, or by some appropriate act. In *Sawyer v. Brossart* (67 Ia. 678) the defendant, residing in California, wrote to the plaintiff, living in Iowa, and offered to sell him certain real estate for five thousand dollars. The plaintiff answered, accepting the offer, and added, "money at your order at First National Bank here." It was held that there was no binding acceptance, because it was implied, though not expressed in the offer, that the money was to be paid at the residence of the defendant in California, and hence there was not an acceptance of the offer, *as made.*

These cases are here mentioned, merely as illustrating the various phases in which the sufficiency or insufficiency of an assumed act of acceptance of a proposal has been viewed by the judicial mind, in different conditions of fact. It is easy to deduce from them certain indispensable requisites of every binding and effectual act of acceptance, where no formal notice thereof is given. It will thus appear, that such indispensable requisites are absolutely wanting in the facts of the present case. Before proceeding to the further consideration of these requisites, however, it may be well to point out the specific acts of the plaintiff, which are supposed to indicate his acceptance of the defendant's written proposal.

The first of these acts appears in the plaintiff's writing on the paper, as it came from the defendant, the word "accepted," and signing his name underneath. Nothing whatever was effected by this proceeding,

because it went no further. The paper remained in the plaintiff's possession, and was never delivered by him to the defendant, or to any person for her. He could have erased his signature at any time up to the trial of the cause, and so the proposal would have appeared with no more legal significance than it bore before it reached him. It is impossible to suppose that a man can be bound to another by any writing which he merely subscribes, and then keeps in his own pocket.

Another act was the plaintiff's visit to the residence of the defendant for the purpose, let it be admitted, of closing the contract with her. But nothing was effected then. Whatever he may have intended in that visit, not an act was done, or a word uttered, which contained the least indication of the plaintiff's acceptance of the defendant's proposal.

There is left, then, only the deposit by the plaintiff of the two hundred and ten dollar check in the Bank of East St. Louis. The effect of this will be considered further along.

One of the essential requisites of a binding acceptance, as appears from the authorities above referred to, is, that it must be an acceptance of the proposal, *as made;* or, in the language of our Supreme Court, it must accept the terms "as they were intended to be accepted." An acceptance by the person receiving a proposal may appear in his part performance of the intended contract, or in his exercise of some privilege or right which the consummated agreement would secure to him. But, in any case, the act done, in the absence of a formal acceptance, must be something which the proposal itself contemplates. The act of acceptance, whatever it may be, expresses *affirmation* of the proposal. How is it possible to express such affirmation by the doing of something which the proposal *does not propose?* The suggestion carries a self-contradiction on its face. Now, it must be borne in mind that, whatever may have been the previous relations of the bank to the parties, as an

agent through whom the plaintiff, under the terms of the decree, made his payments of alimony, the expressed design of the defendant's proposal was to supersede the financial details of the decree, and to introduce wholly new mutual obligations with reference to that subject-matter. The bank was not mentioned in the proposal. The future payments were to be made by the plaintiff to the defendant, under a new and independent arrangement. The most that can be said is, that the plaintiff selected the bank as his agent on that occasion for the transmission of the check to the defendant. He had, then, a perfect right to countermand the order to his agent, as he did do, before any execution of it, and to put the check back in his pocket. It was as if he had handed the check to his clerk for delivery to the defendant, and then recalled it before the clerk had started on his errand. If the check, or money, had been paid directly to the defendant, there would have been an act accepting the proposal "as made," or "as it was intended to be accepted." On the other hand, if the proposal had stipulated for a payment to or through the bank, the payment or deposit, as made, would have been a valid act of acceptance. But the stipulations of the proposal, as made, admit of no such result.

Again: It is essential to the binding effect of an acceptance, shown by act of the person to be bound, that the act be *done*—consummated—not merely initiated and then abandoned without consummation. Let it be admitted that the plaintiff intended to pay the check, or the money, to the defendant, through the bank. Still the payment was never consummated. It was abandoned while yet in the initiatory stage. It was as if he had extended the money towards her in his hand and then withdrawn it before she could get it into her possession. There was no payment as contemplated in the proposal, and, therefore, no effectual act of acceptance.

We are, therefore, of opinion that the circuit court erred in taking the case from the jury on the ground

that the bond sued on was superseded by a later contract.

The judgment is reversed and the cause remanded. Judge Thompson concurs in this opinion; Judge Rombauer concurs in the result.