G. H. IRELAND, RESPONDENT, v. E. SHUKERT, APPELLANT.—177 S. W. (2d) 10.

Kansas City Court of Appeals.   March 1, 1943.

Hearing denied January 10, 1944.

*Thurber Kelley, Lawrence R. Brown* and *Ryland, Stinson, Mag & Thomson* for appellant.

*Nelson E. Johnson* for respondent.

CAVE, J.—This is an appeal by the defendant from a judgment of the Circuit Court of Jackson County, in favor of the plaintiff on a letter of guaranty signed by defendant. The cause was tried by the court without the aid of a jury and at the conclusion of plaintiff's evidence, the defendant offered an instruction in the nature of a demurrer, which was overruled. Defendant stood on the demurrer and offered no evidence. There were no other declarations of law asked and no finding of facts requested or made.

The petition declared on a written guaranty signed by the defendant and was in usual form. The answer consisted of a general denial, together with a denial of liability on the following grounds: (a) That the alleged guaranty of the defendant is wholly without consideration and void; (b) that the said John J. Van Evera mentioned in the petition was without capacity or authority to enter into any agreement with the defendant; (c) that the said guaranty alleged in plaintiff's petition does not constitute a valid and binding contract, guaranty or obligation on behalf of the defendant; (d) that the alleged guaranty agreement is void and of no force or effect for lack of mutuality. The reply was a denial of all new matter contained in the answer, together with an allegation that the defendant was estopped to deny the validity of said guaranty contract because he had received the benefits of the contract.

In general the evidence developed the following facts: On June 11, 1929, the Jewell Development Company, a corporation, acquired a ninety-nine year lease on certain real estate located at 47th Street and Troost Avenue in Kansas City, and built a two-story brick building thereon. On November 1, 1929, the Jewell Development Company executed a deed of trust on this leasehold, wherein the Kansas City Title & Trust Company was named as party of the second

part, trustee, the owners and holders of notes described in said deed of trust, payable to bearer, were named as parties of the third part, and one John J. Van Evera was named as party of the fourth part. The deed of trust was duly recorded and was given to secure the payment of various promissory notes or bonds aggregating the sum of $40,000, all bearing interest at seven per cent per annum from date until paid, and having attached interest coupons, all of said notes and coupons being payable to bearer at the office of said Van Evera in Kansas City. The notes further provided that they should bear interest at eight per cent after maturity. Shortly after the execution of the deed of trust and notes, the plaintiff became the owner of Notes Nos. 19 and 22. Note 19 became due November 1, 1937, and note No. 22 became due on the first day of November, 1938. All interest coupons were payable on the first day of May and November of each year, and all were paid up to and including the first day of May, 1934. One note in the principal sum of $1000 matured on November 1, 1930, and thereafter certain designated notes matured on the first day of November of each year until November 1, 1939, when the balance of the notes matured.

It was further provided that if default be made in the payment of any of said notes or any part thereof, or any of the interest when due, etc., then at the option of the holders of not less than twenty-five percent in amount of the notes secured and outstanding at the time of such default, the whole of said notes shall become due and foreclosure may be had. The deed of trust further provided that the Jewell Development Company should deposit with Van Evera on the first of each month during the term of the loan a sum equal to 1/12th of each annual payment upon the principal, together with 1/12th of the annual interest charges, taxes and insurance premiums accruing during each fiscal year. These deposits were to be additional security under the trust instrument. Out of the sums so deposited, payments were to be made by Van Evera on the taxes, insurance premiums and interest coupons maturing, and matured principal notes. This was the extent of the duty and authority given by the deed of trust to the fourth party, Van Evera. However, after the issuance of the notes he acted as agent of the Jewell Development Company in the negotiation of the notes and sold them to twelve or fifteen different purchasers who will hereinafter be referred to as the "noteholders".

. The Jewell Development Company never made any of the monthly payments to Van Evera as required by the deed of trust and for that reason it was in default beginning six months after its execution, but, so far as the record discloses, the noteholders took no action to foreclose.

Early in the year 1931, Van Evera interested defendant and one Frederick H. MacDonald, who was the husband of defendant's grand-

daughter, in exchanging certain property for the above leasehold, and as a result of such negotiations, the defendant, about April 15, 1931, signed a written contract agreeing to pay $4000 in cash and to exchange certain real estate for the above leasehold. Such leasehold was to be assigned and delivered to the defendant "or his order". As a result of such contract of exchange, the Jewell Development Company conveyed the ninety-nine year leasehold to Frederick H. MacDonald and wife and received a deed to the real estate mentioned in said contract. The title to this real estate was in the name of Gertrude Shukert Brent, the daughter of defendant, and she and her husband executed and delivered a proper deed conveying the same. The MacDonalds paid the $4000 referred to. The defendant claims that he had no interest in the ninety-nine year lease and was acting merely to assist his granddaughter and her husband and get them interested in real estate in Kansas City, while the plaintiff asserts that the defendant did have an interest in said leasehold. We will discuss the evidence concerning that matter later, if material.

From time to time some of the noteholders made inquiry of Van Evera as to whether the monthly deposits were being made according to the deed of trust, but the plaintiff never made any such inquiry. There was no concerted effort on the part of the noteholders to enforce the provisions of the deed of trust. As a result of such inquiries, Van Evera wrote a letter to Frederick H. MacDonald in which he recited that some of the bondholders had made inquiry concerning the monthly deposits and that he had discussed the matter with Mr. MacDonald, and then said, "At that time, I suggested that in lieu of these monthly deposits, it might be an accommodation to you if Mr. Shukert would deposit with me an agreement to guarantee these sums as they fall due. *I am inclined to think that the bondholders would consent to this arrangement in view of the fact that it would give you some money to carry on in the interim.* . . . Kindly let me have your advice in the above matter. . . . " (Italics ours.) Van Evera also called this matter to the attention of Mr. Shukert in an oral conversation and told him "that doubtless these deposits could be waived if Mr. Shukert would guarantee to fulfill the obligations in lieu thereof." As a result of Van Evera's letter to MacDonald on June 4th, and conversations he had with MacDonald and Shukert, there resulted the letter of guaranty sued on, which is as follows:

"June 19, 1931

"Mr. John J. Van Evera
"514 Ridge Arcade Bldg.
"City
"Dear Sir:

"In reply to your letter of June 4, addressed to Mr. Frederick H. MacDonald, in reference to monthly deposits required in the deed

84

of trust, recorded in Book B, 2943, page 255, on the property at the northeast corner of 47th and Troost, I desire to state that in lieu of these deposits being made with you as to principal, interest, insurance and taxes as mentioned on pages 2 and 3 of said Deed of Trust, I will personally guarantee these amounts as they fall due.

"Yours truly,

"E. Shukert."

"ES:EE"

The plaintiff never by any means authorized Van Evera to waive the provisions of the deed of trust and accept this letter of guaranty in lieu thereof; and did not know of the existence of the guaranty until the latter part of 1937; he was not certain when he first received knowledge of the existence of the guaranty, but such knowledge came to him through an attorney he consulted about the time or shortly after his first note fell due. There has been no foreclosure to date and all outstanding notes are still secured by the deed of trust. None of the other noteholders authorized Van Evera to accept this letter and waive the monthly deposits.

Defendant (appellant) contends that the court erred in refusing his requested instruction in the nature of a demurrer to the evidence because: (a) The alleged letter of guaranty was not binding upon the defendant because Van Evera had no authority to bind the noteholders; (b) there was no consideration for defendant's letter of guaranty either in the form of a detriment to the noteholders or in the form of a benefit to any one else; (c) there was no ratification by plaintiff of Van Evera's unauthorized act.

We think it can be concluded from a careful reading of plaintiff's (respondent's) brief that he concedes, or at least does not dispute the fact, that Van Evera acted without the scope of his authority in accepting the letter of guaranty and attempting to waive certain requirements of the deed of trust; but he seeks to hold the defendant liable on these grounds: (a) Shukert, having received the benefits of the contract of guaranty, is estopped to attack its validity; (b) ratification by plaintiff of Van Evera's acts; (c) that defendant's letter was an absolute and definite obligation of guaranty and is binding upon him, it being supported by valuable consideration, not requiring any acceptance of the letter of guaranty by plaintiff, and there being no lack of mutuality.

Van Evera's authority was limited by the provisions of the deed of trust, which was to receive the monthly payments and pay out the money as therein directed. He had no authority by the deed of trust, and the evidence does not show any authority from any other source which would bind the noteholders, to waive the monthly payments and accept something else in lieu thereof. It would seem clear, therefore, that his act of attempting to waive the monthly payments and

accepting this letter of guaranty was void unless validated by some or all of the reasons assigned by plaintiff in his brief.

In approaching a solution of the question of defendant's liability, it must always be kept in mind, as we have said, that the plaintiff, the noteholder, never authorized Van Evera to take the action he did, and had no knowledge of such action for six or seven years thereafter. He didn't make demand of defendant for payment of the notes under the letter of guaranty until January 16, 1940. Suit was filed shortly thereafter.

Plaintiff first contends that the defendant is estopped to deny the validity of the guaranty because he received some benefits therefrom. As the basis for the assertion that Shukert received some benefits as the result of the guaranty, it is contended that he had some interest in the ninety-nine-year leasehold and that after the letter of guaranty was issued, he nor any other person made the monthly deposits with Van Evera as was required by the deed of trust, thus permitting him to use his money for some other purpose. The evidence fails completely to show any legal liability of Shukert to make the monthly payments or any other payments as required by the deed of trust, unless it be the letter sued on. The evidence does show that the title to the real estate exchange for the Jewell Development Company property belonged to Shukert's daughter and that Shukert was greatly interested in his granddaughter and her husband, and very solicitous that they become interested in real estate in Kansas City; and that he advanced considerable money to help carry the leasehold after it was assigned to MacDonald, but other than evidence of this type, there is not one whit of testimony which would tend to make him legally liable for the debt against the leasehold.

To support his argument on the theory of estoppel, plaintiff cites and relies on the following cases: Motor Freight Terminal Corp. v. Brooks, 132 S. W. (2d) 1064; Kusnetsky v. Security Insurance Co., 313 Mo. 143; Runnels v. Lasswell, 219 S. W. 980; Hartman v. Chicago, B. & Q. Ry. Co., 192 Mo. App. 271; Rhodus v. Geatley, 347 Mo. 397, 147 S. W. (2d) 631. With the general principles of law of estoppel announced in those cases, we have no quarrel, but we do not consider them controlling in this case. In the Motor Feight Terminal Corporation case, *supra*, l. c. 1065, the court pointed out a distinction which makes it inapplicable to the facts in the present case. The Court there said: "This case must be distinguished from cases where contracts as modified were never acted upon by the parties but remained wholly executory." In the case at bar, the plaintiff never acted upon this letter of guaranty, didn't authorize it, wasn't bound by it, and had no knowledge of it. In the Kusnetzky case, *supra*, the Supreme Court had this to say as the basis for its decisions: "They received the benefits of the contract which they claim was void, *and by their conduct induced plaintiff to act to his prejudice.* They are

therefore estopped to assert its invalidity." (Italics ours.) The italicized language clearly distinguishes that case from the present. A reading of the decisions in the other cases cited by plaintiff will readily distinguish the holding therein from case at bar. Plaintiff's argument and citations on the question of estoppel might be applicable if this suit was between Van Evera and Shukert, but since Van Evera had no authority to act for and bind Ireland, the plaintiff, the defendant received no benefits, as we more fully discuss hereafter. We hold there is no estoppel under the facts in this case.

Plaintiff next contends that "although Van Evera may have acted without the scope of his authority, ratification by the plaintiff gave his act validity." He cites authority for the generally recognized proposition that one may ratify the act of another who undertook, without proper authority, to act as his agent, and such ratification is retroactive. There can be no dispute about that general proposition; but plaintiff's contention in this particular case is that even though he "had no knowledge of the actions of Van Evera in obtaining the guaranty from Shukert, at the time it was obtained, he has ratified the acts of Van Evera by bringing this action on that guaranty". In support of that position, he cites the cases of Fritsch v. National City Bank of St. Louis, 24 S. W. (2d) 1066; Alexander v. Wade, 106 Mo. App. 141; Young v. Emmke, 210 Mo. App. 56; Minter v. Cupp, 98 Mo. 26; and Strauss v. Zollmann, 348 Mo. 337, 153 S. W. (2d) 65. In the Strauss case, *supra*, the question of ratification was in no way involved or discussed by the court. In the other cases relied on by plaintiff to support ratification by filing suit, there is one vital difference in those cases and the present one. In those cases suit was filed *promptly* after the principal learned of the unauthorized act of the purported agent; while in this case, the plaintiff did not file his suit for approximately three years after learning of the letter of guaranty and almost nine years after it was given. It is uniformly held that the principal must, within a reasonable time after knowledge, ratify or repudiate the unauthorized act of an agent or the unauthorized act of a third party in behalf of the principal. [2 C. J. 509, sec. 126; page 516, sec. 137; Hannah v. Butts, 222 Mo. App. 1098, 14 S. W. (2d) 31.]

We conclude there was no proper ratification of the unauthorized act of Van Evera by the mere filing of this suit approximately three years after the plaintiff learned the facts. Such proposition was not discussed in the cases relied on by plaintiff. Of course, this does not mean that, by filing suit upon an unauthorized contract, the principal may be bound in such manned that he would be estopped to later urge its invalidity, but that is not the issue here involved.

The next point of controversy is whether there was any consideration for defendant's letter of guaranty and whether it was necessary for plaintiff to accept the letter of guaranty. To be valid, a contract of

guaranty must be supported by consideration. [Watkins Co. v. Smith, 31 S. W. (2d) 554; De Lassus v. Russell, 296 S. W. 225.] This court, in Kelly-Springfield Tire Co. v. Hamilton, 230 Mo. App. 430, l. c. 433, 91 S. W. (2d) 193, l. c. 195, defined a guaranty as follows: "A guaranty is a collateral agreement for the performance of the undertaking of another. In other words, guaranty is a separate contract which imposes different responsibilities than those imposed in the contract to which it is collateral."

To support his contention that there was a sufficient consideration, plaintiff cites many cases announcing the well recognized principle of law that even slight consideration is sufficient to support a promise; that such cases do not rule the point directly involved here. What brought about defendant's letter sued on? Plaintiff did not demand it and had no knowledge of its existence for some six years after it was given, and no other noteholder demanded it. Van Evera, who was acting without authority, said it was his idea and plan because he thought it would be to the best interests of all concerned. With this in mind, he wrote MacDonald a letter dated June 4, 1931, suggesting that it would be an accommodation to MacDonald if Shukert would deposit with him (Van Evera) an agreement to guarantee certain sums of money as they fell due under the mortgage, and then said, "*I am inclined to think that the bondholders would consent to this arrangement* in view of the fact that it would give you some money to carry on in the interim. . . . " (Italics ours.) And in a conversation with the defendant, after the above letter was written, he stated to the defendant, "*that doubtless these deposits could be waived* if he (Shukert) would guarantee to fulfill the obligations in lieu thereof". (Italics ours.) It is clear from the above letter and Van Evera's oral statement to Shukert that he did not have the authority or consent of the noteholders at that time to make any binding contract and that he was not purporting to make a binding contract, but on the contrary, was expressing the opinion that if the defendant would agree to guarantee the payments as they fell due, it was Van Evera's opinion that the noteholders would accept such a proposition. He was attempting to get a proposal which would be agreeable to the noteholders. Under such circumstances, defendant wrote the letter sued on and delivered it to Van Evera, who never submitted it to any of the noteholders and never received their consent to waive certain provisions of the deed of trust as a consequence of such letter. Shukert's letter or proposition did not guarantee any past due indebtedness because in it he stated: "I desire to state that in lieu of these deposits being made with you as to principal, interest, insurance and taxes as mentioned on pages 2 and 3 of said deed of trust, I will personally guarantee these amounts *as they fall due*." (Italics ours.) The proposition involved by the exchange of letters and Van Evera's oral conversation with Shukert was to get the noteholders to waive

certain rights they had under the deed of trust and before it could become a binding contract it was necessary for the noteholders to accept Shukert's guaranty in lieu of the monthly payments and to notify him of such fact. If the noteholders did not accept that proposition, then they were not bound thereby and could at any time enforce their rights under the deed of trust, and their mere failure to enforce such rights is not a sufficient consideration to support the proposed guaranty. Our courts have repeatedly held that in order for forbearance by the creditor toward the principal to be a sufficient consideration, there must be an agreement on the part of the guarantor that he will forbear. Mere forbearance or omission on the part of the creditor to exercise his legal rights without any agreement to that effect is not sufficient, because he may at any moment and at his own pleasure proceed. There must be promise for promise. [DeLassus v. Russell, *supra*, l. c. 227; Allen-West Commission Co. v. Richter (Mo.), 228 S. W. 827; Globe Indemnity Co. v. McDowell, 159 S. W. (2d) 822.] In further support of his contention that there was a valuable consideration for the guaranty, plaintiff cites many cases, the most recent being Duvall v. Duncan (Mo.), 111 S. W. (2d) 89, wherein the Supreme Court was discussing the question of consideration in the settlement or compromise of a doubtful claim. No such situation exists in this case; however, in that opinion the Supreme Court reviewed many Missouri authorities which discuss the question of consideration and approved the universally accepted rule that "it is not necessary that a supposed consideration be of some real value to the promisor. It is sufficient that it is any detriment or inconvenience to the promisee or that he change his relations or relinquish his supposed right against the promisor or a third party in consequence of such promise." The other cases cited by plaintiff follow that general principle and we agree that is the law, but it does not apply here, because defendant's proposal was to do a certain thing if the plaintiff and the other noteholders would waive certain rights they had under the deed of trust. This proposal was never accepted or acted upon by the plaintiff or the other noteholders, and therefore they relinquished nothing and the defendant gained nothing, because the noteholders could have proceeded to exercise their rights under the deed of trust at any time. We deem it unnecessary to discuss all the other similar cases cited by the plaintiff on this point because they are to the same effect.

It is also plaintiff's contention that Shukert's letter "was an absolute guaranty of a pre-existing debt", and therefore no notice of its acceptance was necessary and cites the cases of Linro Medicine Co. v. Moon, 190 Mo. App. 366; Peoples Bank v. Stewart, 152 Mo. App. 314; and Sewing Machine Co. v. Richards, 115 U. S. 524. The last case cited simply held that if the guaranty is signed by the guarantor at the request of the other party, no notice of its acceptance is neces-

sary. That case has no application here because neither the plaintiff nor any one authorized by him, ever requested the defendant to sign the letter of guaranty. In the Linro case, *supra*, the court quoted with approval the very doctrine which we hold is applicable to the facts in this case; "it has been long settled in this State, that a mere proposal to guarantee a contingent liability is not binding on the guarantor, unless he is notified of its acceptance". The opinion is that case also announces the general proposition that where a party directly binds himself to be responsible for the fulfillment of another's contract already made, no notice is necessary; but that is not the situation here.

Both parties herein cite the case of Texas Company v. Stanberry, 165 S. W. (2d) 696, and contend that it supports their respective positions. Plaintiff argues that the opinion of this court in the last cited case is decisive of the issue of whether notice was necessary because, he contends, "Shukert's letter was an unqualified guaranty of the fulfillment of another's contract already made". We do not so construe the letter of guaranty in this case. Shukert's letter proposed, "in lieu of these deposits being made with you . . . I will personally guarantee these amounts as they fall due". As we have said, this was clearly a proposal to modify the provisions of the deed of trust; it was not an unconditional guaranty of another's prior existing debt or contract. His letter must be read and interpreted in connection with Van Evera's letter of June 4th and Van Evera's conversation with him, wherein it was stated in substance that he (Van Evera) believed the noteholders would agree to waive their certain rights under the deed of trust. We think the language of Boyer, Commissioner, at page 700 of the opinion in the Texas Co. case is direct authority for the conclusion we have herein reached; he there states: ". . . Such offer does not become a binding contract until acceptance and performance in reliance thereon and of notice to the promisor, or knowledge on his part, of such acceptance and reliance".

Plaintiff also relies upon section 3345, Revised Statutes Missouri 1939, and contends that section will import a consideration for the the promises herein made. The section is as follows: "all instruments of writing made and signed by any person or his agent, whereby he shall promise to pay to another or his order, or unto bearer, any sum of money or property therein mentioned, shall import a consideration and be due and payable as therein specified." That section has been construed by the courts to apply to negotiable and non-negotiable written promises (Scottish Rite Temple Assn. v. Lucksinger, 231 Mo. App. 486, 101 S. W. (2d) 511); but in that case at page 512, the court said: "Under such section, in any case *in the absence of any affirmative proof to the contrary*, the law will import a consideration for the promise, even though one be not recited in the writing; . . . " (Italics ours.) Since we have concluded, as above stated,

that the evidence affirmatively shows there was no consideration for this contract, the above section has no application. The same distinction was made by the Supreme Court in the case of Allen-West Commission Co. v. Richter, *supra*.

Plaintiff makes the point in his brief that defendant's letter "was an absolute and definite obligation of guaranty and is binding upon him". He cites many cases discussing the law relating to absolute and unconditional guaranty, but since we hold that defendant's letter was not an absolute and unconditional guaranty, those cases are not applicable.

For the above reasons, we conclude that the trial court erred in refusing to sustain defendant's demurrer to the evidence. It follows that the judgment should be reversed. It is so ordered. All concur.

## ON REHEARING.

BLAND, J.—After carefully considering this case we have concluded that the opinion of CAVE, Judge, rendered upon the original submission, should be, and hereby is, adopted; but deem it proper to make the following observations, in view of the matters suggested in plaintiff's brief on rehearing.

It is claimed that defendant was the equitable owner of the ninety-nine year lease and, having received benefits by virtue of the execution of the guaranty, should be bound by the latter.

We are of the opinion that the fact, if it be a fact, that defendant had an equitable interest in the lease, should make no difference in the disposition of the case. Plaintiff, and the other noteholders, did not accept the guaranty and at no time gave up their rights in the matter of having the deed of trust foreclosed. The so-called guaranty, never having become effective, it cannot be said that defendant received any benefits under it. Benefits, in legal contemplation, cannot be based upon a contract nonexistent. The same answer is to be made to the contention that there was a consideration for the guaranty because, as it is claimed, Frederick H. McDonald received a benefit from it.

However, it is stated that plaintiff ratified the act of Van Evera in causing the guaranty to be written. That ratification is shown by the acquiescence and affirmative action on the part of plaintiff. In this connection plaintiff says that there was evidence that he knew of the guaranty as early as 1931. Van Evera testified: "Q. When did Mr. Ireland first see that document marked Exhibit 1? A. I could not answer that. Q. Well, would you say it was after—cannot you give us any idea of the time? A. I dare say—now, this is conjectural —I dare say it was during the year 1931 when he was doubtless informed of this, as other of the bondholders were, that Mr. Shukert had kindly given his personal guarantee that he would in lieu of these waivers of taxes, principal and interest, et cetera, guarantee."

If this testimony can be said to amount to substantial evidence that plaintiff knew of the guaranty in 1931, it is contradicted by the testimony of plaintiff, himself, that it was first brought to his attention in 1937 by his attorney. Plaintiff is bound by his personal testimony. [McCoy v. Home Oil & Gas Co., 60 S. W. (2d) 715.] Plaintiff's wife, now deceased, owned one of the notes now held by him but there is no evidence that Van Evera notified her of the guaranty.

However that may be, the doctrine of ratification, as used in the connection with which plaintiff attempts to use it, is applied in cases *where the principal is sought to be bound* because he has ratified the acts of his agent done without the scope of the latter's authority. We do not hold that the *principal, himself,* cannot, in any case, rely upon his own conduct as well as formal acts to show that he had adopted the acts of his agent and thereby entered into a contract with the third party. However, that is not this case. In the first place, while, Van Evera had no authority to negotiate with defendant for a guaranty he did not attempt to enter into an unconditional contract of guaranty with the defendant. It was understood that the guarany would not be effective unless the noteholders accepted it. It was not to become a contract until this condition was fulfilled. Therefore, it was not, strictly speaking, a question of the noteholders accepting or *repudiating* the action of Van Evera. If they refused to accept it there would have been no question of *repudiation* of Van Evera's action involved, as Van Evera's understanding with defendant contemplated that there might be a refusal of the bondholders to accept. The bondholders were not put in the position of being obliged to accept or repudiate the action of Van Evera. Under the terms of the agreement with Van Evera and the defendant they could accept or refuse to accept the proposed guaranty. We do not say that they could not have indicated their desires in the matter by conduct as well as formally but the mere silence of plaintiff, for the time involved, furnishes no evidence of acceptance under the circumstances.

"Where the offerer, instead of offering to do something if the other party will perform, thus leaving the latter free to perform or not as he pleases, requires a reciprocal promise from the offeree, *the latter must communicate* his acceptance of the offer and thereby bind himself by an engagement from which he cannot recede or there will be no agreement; even a compliance with the terms of the offer will not suffice. *Communication of acceptance in such a case is not only necessary to bind the offerer, but also to bind the offeree,* and the offerer cannot, by a stipulation to that effect in the offer, make silence on the offeree's part an acceptance." [13 C. J., p. 285.] (Italics ours.)

"A binding contract can only occur when the offer made is met by an acceptance which corresponds with the offer made in every particular. There is no contract until acceptance of the offer by the party receiving it, is in some way *actually or constructively communi-*

*cated to the party making the offer.* [Hebb's case, Law Rep., 4 Eq. Cas. 9.] *And it must be communicated to the other party without unreasonable delay.* [Bruner v. Wheaton, 46 Mo. App. 366.] And 'express notice of acceptance can only be dispensed with when apparently not contemplated and some other act of acceptance is equally clear and unequivocal.' [Lungstrass v. German Ins. Co., 48 Mo. 201.]'' [Robinson v. The St. Louis, K. C. & Northern Ry. Co., 75 Mo. 494, 498. See, also, Cangas v. Rumsey Mfg. Co., 37 Mo. App. 297; Lancaster v. Elliott, 28 Mo. App. 86.] (Italics ours.)

There was neither any communication of acceptance of the guaranty or, in fact, any action taken by plaintiff or any of the noteholders within a reasonable time. It is true that, on January 16, 1940, plaintiff's attorney wrote defendant demanding payment under the guaranty and saying ''you will recall that sometime ago, I called you in reference to the payment of two notes dated November 1, 1929.'' If this letter can be said to constitute an attempt to accept the guaranty by plaintiff it does not comply with the requirement that the acceptance ''must be communicated to the other party without unreasonable delay''. [Shockley v. Fischer, 21 Mo. App. 551.] While the letter states, in effect, that the writer had attempted to collect the two notes ''sometime ago'' when that time was is not disclosed.

The judgment is reversed. *Cave, J.,* concurs; *Shain, P. J.,* not sitting.