BANKERS INDEMNITY INS. CO. v. FRIG-
IDAIRE SALES CORP.

No. 8686(2).

United States District Court
E. D. Missouri, E. D.

June 23, 1953.

Moser, Marsalek, Carpenter, Cleary & Carter and Lee M. Carter, of St. Louis, Mo., for plaintiff.

Chapman & Chapman, and Thomas W. Chapman, of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff's claim here is based on subrogation from its insured, Stix, Baer & Fuller, a retail merchant, for money expended in defending and making settlement of a claim for personal injuries against the retail merchant by a customer. The customer sustained injuries because of defects in an electric washing machine purchased from the retail merchant who purchased it from the defendant. The customer's claim was based on breach of warranty. The complaint in this suit pleads an express warranty by defendant to install and service the machine for one year, and a breach.

Plaintiff files a brief asking recovery on an implied warranty and presents as the issues: (a) right of plaintiff to maintain this claim under subrogation; and (b) whether a service company which performed the work of installing and servicing washing machines for defendant was defendant's agent with authority to bind defendant to an implied warranty. For reasons stated we find for plaintiff on both issues.

## I.

### Facts

Stix, Baer & Fuller,[1] as a retailer, handled defendant's [2] line of appliances. It sold one of defendant's electric washing machines to a customer on October 3, 1949. The customer sustained injuries on January 5, 1950, resulting from electric shock, when she tried to connect a hose from the machine to the house faucet. The shock was due to a short circuit in the motor on the machine.

On February 2, 1950, the plaintiff notified defendant of the customer's injury, that the customer was making a claim for damages against the retailer, and called on defendant to assume the defense and payment of any judgment secured in the customer's case. Defendant denied liability for the injury sustained by the customer. Plaintiff thereupon assumed the defense of the customer's suit, under the terms of its policy held by the retailer. During the trial the customer's case was settled for $4,250. Additional sums, represented by attorneys' fees and other expenses incurred in defense of the customer's suit, raise plaintiff's claim to $5,023.71.

The washing machine causing injury, at time of sale by the retailer, was a second-hand, or reclaimed machine. All new washing machines sold by the retailer carried defendant's warranty as a matter of course. Warranty on second-hand machines, however, depended on an independent agreement between the retailer and defendant. A warranty on new machines, and when given on used machines, covered installation and servicing and replacing any defective parts for a period of one year after sale. For this warranty, the retailer paid defendant a flat fee. Defendant employed a service company to do the work called for by the warranty. Defendant paid the service company, each month, one-twelfth of the warranty charge collected from the retailer. The service company was a separate corporation. Its sole business is servicing defendant's appliances. There is no evi-

---

1. Referred to as the retailer.

2. Clerical errors by plaintiff, describing parties and their relation to events, even in pleading, are waived since no objection was made to evidence on that ground.

dence of any other connection between defendant and the service company.

The customary way of handling sales of new washing machines, and securing warranty coverage by defendant, was for the retailer at the time of sale to notify the service company of the sale and the address of the buyer. The service company would then install the machine and start the service. At a later date the retailer would notify the defendant. Defendant would then bill the retailer for the warranty charge and start the monthly payments to the service company.

The washing machine under inquiry in this case was sold by the retailer to the customer as a new machine. The retailer notified the service company of the sale and the service company installed the machine. Soon after installation the machine started to give trouble. On an early call the service company observed the machine to be a second-hand one and made a record of such fact. Sometime prior to January 5, 1950, and after knowledge that the machine was not new when sold on October 3rd, the service company installed another motor in the machine. This second motor was defective and caused the injury of January 5, 1950. The retailer notified the defendant of the sale, for warranty purposes, February 8, 1950. On a statement sent by the defendant to the retailer on March 1, 1950, was a warranty charge for the machine, along with other warranty charges on other machines. The retailer paid the warranty charge on the machine in this case, and defendant retains it.

## II.

### Conclusions

■ (A) This is a diversity case. The transactions all took place in Missouri. Missouri authorities control the issues of law.

■ The facts in London Guarantee & Accident Co. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766, 64 A.L.R. 936, are so similar to the facts of this case that we con-clude that case is authority for the right of plaintiff to maintain this suit.[3]

The nature and character of injuries received by the customer, as a result of the shock, support the amount of the settlement of the claim by plaintiff as fair. The expenses incurred in defense of the suit are not contested. We find they are reasonable.

(B) Plaintiff's position that the service company, as agent of the defendant, had authority as a matter of law, under the facts of this case, to bind the defendant, presents a more difficult question. There is little or no dispute as to the facts.

It is plaintiff's theory that since the service company did not wait for authorization from defendant before installing the washer, but on notice from the retailer proceeded to execute the warranty service and as part of the warranty service replaced the motor after learning the machine was second-hand, together with the fact that defendant billed the retailer for the warranty charge, accepted the payment and still retains it after knowledge of the acts of the service company and notice of the injury and the claim against it growing out of the injury by a washing machine sold by it, evidences the agent was acting within the apparent scope of his authority, and binds the principal.

It is further plaintiff's position that defendant has by its course of conduct held the agent out as possessing sufficient authority to embrace the particular act in question, namely to bind the defendant to the usual warranty on the washing machine in question.

This case presents some puzzling features. While defendant as a matter of law is protesting the authority of the service company to bind it to a warranty, there is not the slightest evidence of defendant ever protesting or questioning, in fact, any act of the service company in this case. Furthermore, while defendant denies the warranty in this case, it made no effort during the trial to explain its sending the retailer a bill for the warranty, collecting and re-

---

3. Defendant's brief is largely devoted to an assumed charge of negligence against it.

That character of issue is not now in the case.

taining the warranty charge, after notice of the injury and denying liability. Summed up we have a record where the conduct of the parties was precisely the same as where defendant did warrant its machines in other cases of sales generally, and no attempt to show that such conduct was due to error or other cause in this case, but yet a warranty is denied. Questions present themselves bearing directly on the contested issue. If defendant did not warrant the machine, why did it bill the retailer for the warranty? What did defendant give the retailer in return for the sum collected for the warranty? On what theory can defendant demand, collect and retain the consideration given for the warranty and still blandly deny any exists? Defendant could have refused the retailer a warranty on the machine on learning it was second hand. It had that right, but has never in fact exercised it to this day.

There are elements of both express and implied warranty present in this case. This is not the usual case of express warranty. Because of the course of dealing between the retailer and defendant, doubtless made necessary by the circumstances of the retailer's business and volume, the reporting of the sale by the retailer to defendant and execution of the express warranty by the defendant was not as of the time of sale to the retailer's customer but subsequent to the sale. This sale took the usual course of the custom of the parties. It was finally consummated like other sales by defendant, with full knowledge of all facts, issuing its warranty and being paid for it. From these facts we conclude it was the intention of both parties, the retailer and the defendant, that defendant would warrant the machine. These facts establish an express warranty. The facts establishing the express warranty are not inconsistent with those showing an implied warranty. Davies v. Motor Radio Co., Mo.App., 236 S.W. 2d 409. Defendant chose to operate by employing another corporation to perform its service work and execute its warranty. Whether the agent in this case exceeded his authority in servicing the machine before getting instructions from defendant, or in servicing a second-hand machine without express directions, is now of no importance. Agency in fact did exist between the defendant and the service company. The legal effects of the agent's acts are the same as if an employee of defendant performed them because defendant, with knowledge of the facts, retained the benefits of the conduct of its agent and charged the retailer a consideration for them. This justifies the inference of ratification by defendant of the acts of the agent, making the agent's acts those of the principal. Circumstances may be slight yet raise the presumption of ratification. Compton v. Vaughan, Mo. Sup., 222 S.W.2d 81. And such ratification may be retroactive. Ireland v. Shukert, 238 Mo.App. 78, 177 S.W.2d 10.

One of the things done by defendant through its agent, in servicing the machine, was to install a motor for the special purpose of operating the machine. This motor caused the injury because of a latent defect. Defendant's theory is that up to the event and continuing up to the time the customer was injured, there had been no statement of any character made by defendant or its agent that amounted to an express warranty. Implied warranties are arrived at by operation of law on established facts. Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106. On the established facts, defendant installed a motor in the machine, for a special purpose, as a part of the servicing for which the retailer paid. That act carried with it an implied warranty that the motor was fit for the particular purpose for which it was installed in the washing machine. It was not. It follows there was a breach of the implied warranty of fitness. Comings v. Leedy, 114 Mo. 454, 21 S.W. 804.

Let judgment be settled and submitted.