**FIRST NATIONAL BANK OF CLAYTON,**
Plaintiff-Respondent,

v.

**FRISCO PARK REALTY COMPANY,**
Defendant-Appellant.

No. 35029.

Missouri Court of Appeals,
St. Louis District,
Division 2.

May 14, 1974.

Samuel C. Ebling, John B. Lewis, Millar, Schaefer, Ebling & Wallace, St. Louis, for defendant-appellant.

Tyree C. Derrick and David H. McGhee, St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant Frisco Park Realty Company appeals from a judgment against it in a court tried case for the principal amount due on a renewal demand note of $8,500, interest in the amount of $2,444.61 and attorneys' fees of $1,094.47, aggregat-

ing $12,039.08 with interest thereon at 6% per annum from date of judgment.[1]

The primary issue is whether Frisco Park's corporate secretary had authority to bind Frisco Park to a guarantee for a loan to another corporation. We find that Frisco Park was not liable for the payment of the loan to plaintiff and therefore reverse the judgment of the trial court as to Frisco Park.

Plaintiff is a bank institution located in St. Louis County. In April, 1966, Richard Mutrux and his associates sought to obtain a $50,000 loan from plaintiff for Three Fountains, Inc., a St. Louis restaurant and bar in which Richard Mutrux was officer and director. The purpose of the loan as proposed by Richard Mutrux was to make improvements on the lot adjoining the Three Fountains, Inc., which was leased by Three Fountains from Frisco Park. The improvements were to enhance business operations of Three Fountains by having a swimming pool and other recreational facilities on the adjoining property thereby making Three Fountains more attractive and increasing the value of its investment in the surrounding area. Plaintiff's loan officer refused to lend $50,000 on the basis of Three Fountains' financial statement, but he offered to make a $30,000 loan on the condition that Frisco Park would guarantee the loan. Plaintiff's loan officer had known Richard Mutrux to be the corporate secretary of Frisco Park, and Richard Mutrux was specifically requested to furnish plaintiff with a resolution of Frisco Park's board of directors authorizing Richard Mutrux as secretary to execute a loan guaranty on behalf of Frisco Park. Plaintiff's loan officer was advised by Richard Mutrux that it would take time to obtain such a resolution, as corporate officers of Frisco Park were located in San Francisco,

California. The loan guaranty resolution was never forthcoming, but a loan guaranty for a $30,000 loan to Three Fountains, Inc., was executed on May 9, 1966 by Richard Mutrux signing as secretary of Frisco Park,[2] and the $30,000 was loaned to Three Fountains, Inc.

The proceeds of the loan were disbursed to Three Fountains, Inc., in three installments, and monthly payments of $1,000 each were made on the note for the loan until the principal balance due in 1969 was $10,000. Then, at the request of Three Fountains, Inc., a renewal demand note dated January 1, 1969, for the sum of $10,000 payable in $500 monthly installments was executed. The renewal demand note was paid down to $8,500 when default occurred. In the fall of 1969, Phillippe Mutrux, President of Frisco Park and brother of Richard, was first advised that Richard had signed a continuing guaranty of the Three Fountains' note as secretary of Frisco Park. He did know, however, of the improvements that were being made to the property which was leased to Three Fountains and owned by Frisco Park and was pleased for it. However, there is nothing in the record to indicate that he or any other officer other than Richard, was aware of any loan arrangements made for financing the improvements.

The trial court found that Frisco Park had authorized plaintiff to make loans to Three Fountains, Inc., based on the continuing guaranty by Frisco Park; that Richard Mutrux had authority to sign the loan guaranty and that by his signing the loan guaranty, Frisco Park had guaranteed the loan; that Frisco Park's property benefited from the loan and subsequent improvements to the land it leased to Three Fountains, Inc., and Frisco Park was therefore estopped to deny that the guaran-

---

1. Default judgment was also taken as to defendants Richard Mutrux and Martha Mutrux who had personally signed the note. No appeal was taken from the judgment as to them.

2. The guaranty was actually to guarantee loans of Westminster Enterprises, Inc., a Missouri corporation whose name was changed to Three Fountains, Inc. The distinction is not important to the determination of the issues of this case.

ty of the loan was beyond its secretary's powers.

There is also dispute on the record as to whether Richard Mutrux was the secretary of Frisco Park Realty Company on the date of the execution by him of the loan guaranty on behalf of defendant. A certificate obtained from the Missouri Secretary of State by plaintiff indicated that on May 9, 1966, Richard Mutrux was secretary of Frisco Park Realty Company. An affidavit dated July, 1966, signed by Phillippe Mutrux, president of Frisco Park, listed Richard Mutrux as secretary. Minutes of Frisco Park's annual meeting of June 20, 1965, showed that Louise Heatlie was elected secretary of Frisco Park Realty Company and has apparently held that office since that date. Amendments to the articles of incorporation filed with the Missouri Secretary of State in December, 1965, show Louise M. Heatlie as secretary of Frisco Park. The court, in any event, found that Richard Mutrux was secretary, and his act in signing the loan guaranty was the act of Frisco Park. For the purposes of this decision, we assume that Richard Mutrux was secretary of Frisco Park on the date of his signing the guaranty.

There were two essential reasons for the trial court's finding that Richard Mutrux had authority to bind Frisco Park to the guaranty of the loan. The first was by reason of his position as secretary of Frisco Park, and his act of signing the guaranty was, in fact, the guaranty of Frisco Park. The second is by reason of a board of directors' resolution of Frisco Park dated December 15, 1959, authorizing the corporate secretary on behalf of the company to negotiate and procure loans from plaintiff bank in unlimited amounts.[3] The corporate resolution was signed by the president, treasurer and secretary of Frisco Park and attested to by the secretary. The resolution was never rescinded. We find that neither the fact that Richard Mutrux was corporate secretary of Frisco Park nor the borrowing resolution of December 15, 1959 forms sufficient basis to sustain the judgment against Frisco Park.

Plaintiff asserts that the authority of Richard Mutrux to bind Frisco Park is by virtue of his office as secretary; that, therefore, Richard Mutrux' signature on the loan guaranty as secretary was all that is necessary to have a valid guaranty. Not so. We reach back and find in Fuller v. Tootle-Campbell Dry Goods Co., 189 Mo. App. 514, 176 S.W. 1091 (1915), that the secretary of a corporation has no inherent power, as such, to sign the name of the corporation to obligations for payment of money. A fortiori, the same tenet applies with regard to the lack of Richard Mutrux' authority as secretary of Frisco Park to bind his company to a conditional obligation for payment of money by guaranteeing a loan. Plaintiff manifested knowledge of Richard Mutrux' lack of authority by requesting that he supply a corporate resolution which would authorize him as secretary to execute the guaranty.

3. The pertinent portions of the resolution read:
  "BE IT RESOLVED, that the Secretary of this corporation, or his successors in office, or any of them be and they hereby are authorized for, on behalf of, and in the name of this corporation to:
  "(a) Negotiate and procure loans from The First National Bank of Clayton, Clayton 5, Missouri, up to an amount unlimited in the aggregate at any one time outstanding;
  "(b) Discount with said bank, commercial or other business paper belonging to this corporation, made or drawn by or upon third parties, without limit as to amount;
  "(c) Give security for any liabilities of this corporation to said bank by pledge or assignment or a lien upon any personal property, tangible or intangible, of this corporation, and
  "(d) Execute in such form as may be required by the bank all notes and other evidence of such loans, all instruments of pledge, assignment or lien, and that none of the same shall be valid unless so signed or endorsed, provided, however, that the endorsement of promissory notes discounted may be effected by any of them. * * *"

The resolution for which plaintiff expressed a need was never forthcoming, but plaintiff nevertheless granted the loan to Three Fountains, Inc.

But there is even stronger reason for plaintiff to know that Richard Mutrux had no authority to guarantee a loan. Plaintiff relies on the directors' resolution of December 15, 1959 to establish Richard Mutrux' authority to obligate Frisco Park in financial transactions. The thrust of plaintiff's argument is that since Richard Mutrux had authority to borrow money, he likewise had authority to guarantee loans. However, there is a difference between authority to borrow and authority to execute a guaranty loan. A loan is the delivery of a specified sum of money to another under contract with an obligation to return an equivalent sum with or without an additional amount agreed upon for the use of the money. In re De Gheest's Estate, 362 Mo. 634, 243 S.W.2d 83 (1951). There was no delivery of any money to Frisco Park. On the other hand, a guaranty is a separate independent contract which imposes different responsibilities than those imposed in a contract to which it is collateral. Four-Three-O-Six Duncan Corp. v. Security Trust Co., 372 S.W.2d 16 (Mo.1963). A guaranty is a collateral agreement for another's undertaking. Ireland v. Shukert, 238 Mo.App. 78, 177 S.W.2d 10 (1943). "Guaranty" and "loan" are not synonymous terms. Plaintiff relies on the corporate resolution of December 15, 1959 as establishing Richard Mutrux' authority to execute a guaranty for Frisco Park. But it is the document itself which clearly establishes that he had no such authority. Through the corporate resolution of December 15, 1959, plaintiff had before it precisely the extent of Richard Mutrux' authority, and it is manifest from that document that he had no authority whatsoever to guarantee a loan for any other company. His authority is limited to the authorization set forth in the resolution. Plaintiff cannot read into the resolution more than what is there. Plaintiff was on notice that Richard Mutrux did not have authority from the December 15, 1959 resolution to guarantee any loan, and the limitations of authority were charged on the face of the resolution. Plaintiff relies on Richard Mutrux' actual authority to execute a guaranty for Frisco Park, but that authority was nonexistent and plaintiff, through the document in its possession, had reason to know that Richard Mutrux did not have the authority claimed.

Scottsbluff Nat. Bank v. Blue J Feeds, Inc., 156 Neb. 65, 54 N.W.2d 392 (1952) is a case strikingly similar to this case. There, a bank was held to be on notice and have knowledge of the limitations of banking transaction authority of a corporate officer based on a corporate resolution in the bank's possession. In quoting from 2 Am. Jur., Agency, § 176, p. 140, the court said, l.c. 54 N.W.2d 399:

" . . . 'Express authority to execute or indorse commercial paper in the principal's name will, in the absence of anything indicating a different intention, be construed as confining the authority of the cases to the execution and indorsement of such paper in the transaction of the principal's business and for the benefit of the principal. Such authority does not include authority to draw or indorse negotiable paper for the benefit or accommodation of any other person; *authority to sign accommodation paper or as security for a third person must be specially given.* Nor does express authority of the nature in question allow the agent to make or indorse negotiable paper for his own use and behalf.' " (Emphasis added.)

We believe the foregoing to be a fair statement of the law.

Plaintiff's knowledge of the lack of Richard Mutrux' authority is made apparent when coupled with plaintiff's request that Richard Mutrux supply an additional corporate resolution (which was never forthcoming) in order to give him the authority

which was lacking in the resolution of December 15, 1959.

Inasmuch as we have held that the plaintiff was on notice that Richard Mutrux was without authority to execute the guaranty, it is not necessary to discuss the issue raised by plaintiff that Frisco Park Realty is estopped to deny that Richard Mutrux was without authority to guarantee the loan by reason of its acceptance of the benefits of the improvement to the property it leased to Three Fountains, Inc.

The judgment is reversed as to Frisco Park Realty Company.

CLEMENS, Acting P. J., and McMILLIAN, J., concur.