Walter NICKLES, et al.,
Respondents/Cross–
Appellants,

v.

AUNTIE MARGARET DAYCARE,
CORP., Appellants.

No. 59394.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 24, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 22, 1992.

Schwartz, Herman & Davidson, Robert Herman, St. Louis, for appellant.

The Wallach Law Firm, Cathy Steele, St. Louis, for respondent.

AHRENS, Judge.

In this action for rent and possession of leased premises, Auntie Margaret Daycare, Corp., (Auntie Margaret), lessee, appeals from the judgment of the trial court voiding a lease between Auntie Margaret and lessors, Walter Nickles, Shirley Nickles, Richard Wilke, and Debra Wilke. Lessors cross-appeal from the judgment. We reverse and remand.

Lessors are the owners of commercial property in St. Louis County. On May 9, 1990, lessors signed a Commercial Lease delivering possession of the property to Auntie Margaret Day Care Corporation. On the signature lines designated "Lessee," Anthony Daly signed: "Auntie Margarets [sic] Day Care Corp [sic] Margaret Daly."

The following provision was typewritten on the form lease under the "Term and Rental" section.

This Lease shall be effective on the date hereof, but the demised term and Lessee's obligations hereunder shall not commence until the first day of the calendar month following the issuance of a permanent Certificate of Use and Occupancy for the demised premises executed by the appropriate public authority.

Typewritten "Additional Terms and Conditions" were attached to the form lease. These included two pertinent provisions:

1. Upon execution hereof, Lessee shall pay to Lessor the sum of One Thousand Six Hundred Dollars ($1,600.00) and on May 9, 1990, the sum of One Thousand Six Hundred Dollars ($1,600.00) will be paid on date of occupancy, as and for a "Security Deposit" for the full and faithful performance by Lessee of each and every term, provision, condition and covenant of this Lease. The Security Deposit shall not bear interest, and shall not be considered an advance payment of any sums payable hereunder. Lease payments will start within 90 days after signing or if opening comes before 90–day time period.

\*     \*     \*     \*     \*     \*

8. This Lease is contingent upon Lessee's ability to secure from all appropriate government authorities all permits and licenses necessary (including occupancy permits) to enable Lessee to use the demised premises for the purposes set forth herein. In the event Lessee is unable to obtain the necessary permits and licenses within ninety (90) days following the execution hereof, Lessee may cancel this Lease by so notifying Lessor of such intention. In the event of such termination and cancellation, Lessee's security deposit shall thereupon be returned to Lessee, this Lease shall thereupon be null and void, and each party hereto shall release the other and hereby does release the other from and against any and all further liability whatsoever.

On August 21, 1990, lessors' attorney sent a certified letter to "Auntie Margaret's Day Care, Inc., Margaret Daly, 11070 Little Drive, St. Louis, MO, 63126." The receiver signed "Daly" on the receipt. That letter advised, "as of August 10, 1990 no rental payments have been made and that first payment was due on August 9, 1990 ... As such please be advised and notice is hereby given that my clients do hereby exercise their option to cause forfeiture of said agreement. Possession of said premises shall be delivered within ten (10) days of the date hereof."

On September 21, 1990, lessors filed a petition for rent and possession, alleging Auntie Margaret had defaulted in its obligation to pay August and September rent.

Lessors requested a judgment of $3,200.00 plus accrued rent to the date of judgment, costs, and restitution of possession of the premises. No answer was filed; however, Auntie Margaret's attorney entered appearance on behalf of the corporation.

The cause was tried on November 20, 1990. On the day of trial, lessors orally amended their petition and requested reimbursement for property taxes. During the presentation of their evidence, lessors also specifically requested reimbursement for insurance premiums from August 9, 1990, to November 26, 1990, when lessors' policy lapsed. Auntie Margaret raised no objection to this request.

At the close of lessors' evidence, Auntie Margaret presented an oral motion to dismiss. Auntie Margaret contended, "There's only one Defendant here, and that's the Daycare Corporation. There's been no foundation laid and no establishment of anyone to sign the lease on behalf of the corporation." As further grounds for the motion, Auntie Margaret asserted, "the first page of the lease provides that no obligation under this lease shall commence until after occupancy permit is issued. And that is—And even in their own records, that is referred to as a contingency that has not been satisfied."

Upon consideration of Auntie Margaret's motion, the trial court determined the provision regarding commencement of lease payments within 90 days was subordinate to the provision making the commencement of Auntie Margaret's obligations contingent upon securing a permanent Certificate of Occupancy and Use. The trial court found lessors failed to meet their burden of showing Auntie Margaret's lack of good-faith effort to comply with the contingency. Further, the trial court determined the lease was void because there was never a meeting of the minds on the agreement. Accordingly, the trial court ordered Auntie Margaret to restore possession of the property to lessors, and lessors to return $1,601.00 to Auntie Margaret.

In its first point, Auntie Margaret contends the trial court erred in sustaining objections to Auntie Margaret's cross-examination of lessors' witnesses regarding the intention of the parties and the execution of the written lease. Auntie Margaret asserts the lease was ambiguous on its face, and, therefore, the trial court should have permitted extrinsic evidence of the parties' intent.

"An ambiguity is said to exist in a written instrument 'only if it is reasonably susceptible of different constructions.' " *Edgewater Health Care v. Health Sys.*, 752 S.W.2d 860, 865 (Mo.App.1988) (quoting *Kalen v. Steele*, 341 S.W.2d 343, 346–7 (Mo.App.1960)). "In determining whether vel non an ambiguity exists, the whole instrument must be considered." *Edgewater*, 752 S.W.2d at 865. "A contract is not rendered ambiguous by the fact that the parties do not agree upon the proper construction to be given it." *Id.* "[W]hether the terms of an agreement are ambiguous is a question of law." *Id.* Moreover, "[i]t is only when the contract or contract term is unclear that the court considers evidence of how the contract was understood or acted upon by the parties." *Dehner Urban Redevelopment Corp. v. Dun & Bradstreet, Inc.*, 567 S.W.2d 700, 704 (Mo.App.1978).

The trial court did not expressly find an ambiguity existed in the terms regarding commencement of Auntie Margaret's obligations under the lease. Auntie Margaret argues, however, "as the court did construe the contract, it must be inferred that the court did make this primary finding that the contract was ambiguous, and therefore extrinsic evidence would be allowed."

Considering the instrument as a whole, we conclude the terms regarding commencement of Auntie Margaret's obligations under the lease are not reasonably susceptible of different constructions, and, therefore, are unambiguous as a matter of law. The lease terms are clear that lease payments were to commence *within* ninety days from the date of execution. Under the lease, those payments included rent, insurance, and property taxes. Auntie Margaret had the option of canceling the agreement if it was unable to obtain the

Certificate of Use and Occupancy *within* ninety days from the date of execution. Thus, the issuance of a permanent Certificate of Use and Occupancy was the triggering event for commencement of Auntie Margaret's obligation to make lease payments at any time prior to the ninetieth day. Because Auntie Margaret chose not to exercise its option to cancel the agreement after it failed to obtain the certificate, Auntie Margaret's obligation to begin making lease payments commenced on the ninetieth day following execution.

The terms regarding commencement of Auntie Margaret's lease payment obligations were unambiguous as a matter of law. Therefore, we find no error in denying Auntie Margaret the opportunity to present extrinsic evidence regarding the parties' intent. *See Edgewater,* 752 S.W.2d at 865.

In its second point, Auntie Margaret alleges the trial court erred in "concluding the lease was void and entering a judgment of rescission prior to allowing appellant to place any testimony into evidence in appellant's case."

Under this point, Auntie Margaret initially contends the trial court erred in entering a judgment which favored lessors in part, because lessors "failed to make a submissible case by failing to prove an essential element of their case: that the person who purported to bind Auntie Margaret Daycare, Inc.[,] was in fact acting with authorization from the corporation. Because [lessors] failed to make a case on the merits, [lessors] had no right to relief: and thus [Auntie Margaret was] entitled to dismissal as a matter of law."

Auntie Margaret's contention is without merit. "It is uniformly held that the principal must, within a reasonable time after knowledge, ratify or repudiate the unauthorized act of an agent or the unauthorized act of a third party in behalf of the principal." *Ireland v. Shukert,* 238 Mo.

App. 78, 177 S.W.2d 10, 14 (1944). Moreover, "[w]here it appears that an agent has done an act for the benefit of his principal and the principal has not questioned the authority of the agent to bind him, it will be presumed, until the contrary appears, that the agent was duly authorized." *Darr v. Structural Sys., Inc.,* 747 S.W.2d 690, 693 (Mo.App.1988).

Auntie Margaret has not repudiated or questioned Anthony Daly's authority to bind the corporation under the lease. To the contrary, at oral argument before this court, counsel for Auntie Margaret conceded that on the day Auntie Margaret moved into the premises, it was a tenant under the lease and a landlord/tenant relationship existed between lessors and Auntie Margaret. Further, counsel for Auntie Margaret conceded that the corporation did not dispute in the trial court that the corporation was occupying the premises as a tenant under the lease. The trial court did not err in denying Auntie Margaret's motion to dismiss for failure to make a submissible case.

■ Auntie Margaret also asserts under its second point that, "As the court did enter a judgment, it may be inferred that the motion to dismiss was denied. If this was the case, then the trial court erred by not hearing the additional testimony defendant was entitled to offer under section 510.140 R.S.Mo." [1] Auntie Margaret made no offer of proof regarding the nature of the testimony it contends it should have been permitted to present. Further, aside from references to purported testimony regarding the intent of the parties, Auntie Margaret has not enlightened this court as to the nature or content of any additional testimony. Nevertheless, Auntie Margaret has asserted its right to present additional testimony under § 510.140 RSMo. For that reason, it is necessary to remand this case to permit Auntie Margaret the opportunity to present additional testimony. In

---

1. Section 510.140, RSMo 1986 provides, in part:
   After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, or in the event that the motion is granted and the resulting judgment is later held erroneous, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

light of our holding that the contract was unambiguous as a matter of law, however, any additional testimony may not relate to the intent of the parties regarding the terms of the lease agreement.

Auntie Margaret contends the trial court erred in "voiding a contract after construing it in favor of Auntie Margaret, when neither party sought rescission, and the contract was not void under Missouri law." Thus, Auntie Margaret asserts, the trial court "erred by finding an unreasonable interpretation and voiding the contract; rather than finding the more reasonable interpretation and affirming the contract." In their cross-appeal, lessors also assert the trial court erred in failing to award them the relief they sought and in voiding the lease, because neither party sought rescission and the lease was not void.

Lessors' action was for rent and possession. In light of our previous discussion regarding the absence of ambiguity as a matter of law, we agree the trial court erroneously declared and applied the law in voiding the lease. The lease terms are clear and unequivocal that lease payments were to commence *within* ninety days from the date of execution. Under the lease, those payments included rent, insurance, and property taxes. Accordingly, we reverse the trial court's judgment. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Lessors raise as an additional ground for their cross-appeal that the trial court erred in setting an inadequate supersedeas bond. The trial court ordered the bond set at $500.00. In a motion to amend that order, lessors requested the trial court to set the bond at $49,368.00 to cover twenty-four months' rent and real estate taxes, and to require Auntie Margaret to provide the trial court with evidence of insurance as a condition of the bond. The trial court denied lessors' motion.

Rule 81.09 governs what actions may be stayed on appeal upon the filing of a supersedeas bond. The requirements for the form and amount of the bond are set forth in Rule 81.09(b) which provides, in part:

The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.... When the judgment determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages, or when such property is in the custody of the sheriff, or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the property, the costs of the action, costs on appeal, interest, and damages for delay....

"Rule 81.09 affords substantial discretion in marshalling security, so long as security is the ultimate goal." *State ex rel. Brickner v. Saitz*, 664 S.W.2d 209, 214 (Mo. banc 1984).

Further, under § 535.110 RSMo 1986, an appeal in a Chapter 535 landlord/tenant action will not "stay execution unless the defendant give bond, with security sufficient to secure the payment of all damages, costs and rent then due, and with condition to stay waste and to pay all subsequently accruing rent, if any, into court within ten days after it becomes due, pending determination of the ... appeal." § 535.110.

Auntie Margaret argues that because the trial court awarded lessors no damages, "there was no amount of judgment left unsatisfied" and "the trial court could reasonably find that a $500.00 bond was adequate to protect [lessors'] cost." Auntie Margaret's argument ignores the fact that the stay of execution pending appeal permitted the corporation to remain in possession of the premises without payment of rent, insurance, and property taxes. Thus, under Rule 81.09(b) and § 535.110, the bond was insufficient to protect lessors' interest in the event the judgment voiding the lease and returning possession to lessors was affirmed on appeal.

The trial court's judgment is reversed. The cause is remanded with directions to permit Auntie Margaret the opportunity to present additional evidence consistent with this opinion, only upon Auntie Margaret's posting of a bond within fifteen days from the date of our mandate. Said bond must be sufficient to cover the following lease payments: rent in the amount of $1,600.00 per month from August 9, 1990 to the date of our mandate; $285.00 as reimbursement for insurance lessors maintained on the property from August 9, 1990, to November 26, 1990; and $457.00 per month from August 9, 1990, to the date of our mandate as reimbursement for real estate taxes on the property. As an additional condition of said bond, Auntie Margaret must stay waste and pay all subsequently accruing rent, if any, into court within ten days after it becomes due, pending the trial court's entry of a final judgment. After receiving additional evidence, if any, the trial court is further directed to enter judgment consistent with this opinion.

In the event Auntie Margaret fails to post said bond within fifteen days from the date of our mandate, the trial court is directed to enter judgment in favor of lessors and against Auntie Margaret; award possession of the property to lessors; order Auntie Margaret to vacate the premises; and award lessors the following lease payments: rent in the amount of $1,600.00 per month from August 9, 1990 to the date of the trial court's judgment following our mandate; $285.00 as reimbursement for insurance lessors maintained on the property from August 9, 1990, to November 26, 1990; and $457.00 per month from August 9, 1990, to the date of the trial court's judgment following our mandate as reimbursement for real estate taxes on the property.

Although lessors exercised their option under the lease to declare a forfeiture, lessors elected to seek recovery in a Chapter 535 RSMo rent and possession proceeding. Therefore, in accordance with § 535.-160 RSMo 1986, on the date the trial court enters judgment, Auntie Margaret will be entitled to cure any default by tendering to lessors or bringing into the trial court all lease payments set forth above and all costs, including the costs of this appeal.

SMITH, P.J., and KAROHL, J., concur.