written opinion would have no precedential value. The parties have been furnished with a memorandum supplementing this order. Judgment is affirmed pursuant to Rule 30.25(b).

**STATE of Missouri, Respondent,**

v.

**Marvin JONES, Appellant.**

**No. 59995.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 5, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 3, 1992.

Application to Transfer Denied
July 21, 1992.

Jeannie Arterburn, St. Louis, Lew A. Kollias, Public Defenders, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

### ORDER

PER CURIAM.

Defendant appeals from his conviction of assault in the first degree and his sentence of 11 years imprisonment. We find no error and the judgment is supported by competent and substantial evidence. A

**M. David FRIEBERGER and Susan M. Frieberger, Plaintiffs/Respondents,**

v.

**LAWYERS TITLE COMPANY OF MISSOURI, Defendant/Appellant.**

**No. 59498.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 5, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 3, 1992.

Application to Transfer Denied
July 21, 1992.

Daniel P. Card, II, James B. Ashwell, Clayton, for defendant, appellant.

Susan M. Hais, Theresa Counts Burke, St. Louis, for plaintiffs, respondents.

GRIMM, Presiding Judge.

In this jury-tried case, defendant Lawyers Title Company of Missouri appeals the trial court's judgment awarding plaintiffs/homeowners $95,000.00 for its alleged breach of an escrow agreement. On appeal, Lawyers Title claims (1) the agreement was unambiguous and (2) that under the agreement, it did not owe a duty to homeowners to ascertain that the construction was being done in a "workmanlike manner" before disbursing funds. We agree and reverse.

### I.

In 1986, David and Susan Frieberger decided to build an addition to their home. David Frieberger, an architect, designed the addition himself. When plans for the addition were complete, homeowners solicited bids from various contractors. They chose Roy Freiberger,[1] the contractor who submitted the lowest bid. His bid was approximately $55,000.

Homeowners financed the addition with a $70,000 loan from First Bank and Trust Company. The loan was secured by a deed of trust on homeowners' home and the addition. Homeowners borrowed $70,000 to allow for cost overruns and additional improvements.

First Bank required the loan proceeds be disbursed through an escrow company. Homeowners selected Lawyers Title.

The escrow agreement, dated April 15, 1986, was signed by homeowners, contrac-

tor, First Bank, and Lawyers Title. Pertinent provisions include:

**CONTRACTOR COVENANTS AND AGREES:**

1. To ... fully construct and complete the improvements ... in a first-class workmanlike manner....

**OWNER COVENANTS AND AGREES:**

11. That [Lawyers Title] is Owner's agent only for the purposes of receiving funds....

**[LAWYERS TITLE] COVENANTS AND AGREES:**

15. That it will accept and use due care in disbursing funds in accordance with the terms of this Agreement and will hold [First Bank] harmless against any loss, cost or liability on account of labor, services and materials furnished by the Contractor, subcontractors, suppliers and others for items of construction paid for by [Lawyers Title] out of funds deposited hereunder; ....

**ALL PARTIES COVENANT AND AGREE:**

21. That Contractor is agent for Owner, and should Contractor fail to complete construction, Owner shall be responsible to [First Bank] and [Lawyers Title] to complete all work in accordance with plans and specifications and pay all cost therefor.

26. [T]hat [Lawyers Title] has not been employed and has no responsibility to supervise construction or determine adequacy of design and compliance with plans and specifications, or guarantee that the amount of the funds committed hereunder is sufficient to complete the improvements to be constructed.

David Frieberger testified that once construction began, Lawyers Title employees inspected the site weekly before disbursing funds. Each Friday, contractor would submit vouchers to David Frieberger for signature. Contractor would then submit the vouchers to Lawyers Title for payment. As construction progressed, homeowners

---

1. Although contractor's last name is spelled similarly to homeowners, Roy Freiberger and David and Susan Frieberger are not related.

noticed that "some of the work looked very shoddy [and] some of the materials were inferior."

Both homeowners and Lawyers Title agree that contractor's work was substandard. On September 6, a Lawyers Title employee told David Frieberger he had noted the bad quality of contractor's work. He suggested homeowners should look for another contractor or make contractor correct the problems.

About September 10, a City of Olivette building commissioner inspected the site. The building commissioner discovered an unusually high number of building code violations and suspended construction. The city was going to stop the job, but, at homeowners' request, it allowed contractor to attempt to correct defects. On November 17, 1986, homeowners fired contractor.

Homeowners filed suit against contractor[2] and Lawyers Title. At trial, homeowners' verdict director against Lawyers Title required the jury to find for homeowners if:

First, [the escrow agreement required Lawyers Title to ascertain] whether work was done in a workmanlike manner ... and

\* \* \* \* \* \*

Third, ... Lawyers Title ... failed to perform its agreement.

## II.

■ In its point on appeal, Lawyers Title contends that the trial "court erred in failing to sustain [its motion] for a directed verdict and its subsequent motion for judgment notwithstanding the verdict." It makes several arguments, however we need only address one of them: "[t]he question as to whether the duty of [Lawyers Title] to use 'due care' includes ascertaining whether the work has been done in a 'workmanlike manner' is a question of law for the court and is not a question of fact for the jury in that the contract is not ambiguous."

"In determining the meaning or purpose of a contract, the document must be viewed as a whole. Dissection of an agreement into small, unrelated segments causes confusion and misunderstanding that vanish when the component parts are returned to the context of the whole contract." *Roberts v. Estate of Roberts*, 664 S.W.2d 634, 639 (Mo.App.W.D.1984).

Such is the case here. When read in context, the contract establishes the duties of the parties, and to whom those duties are owed.

Paragraph 1, found under the heading "CONTRACTOR COVENANTS AND AGREES," states that contractor promises "to fully construct and complete the improvements ... in a first class, workmanlike manner...." Paragraph 11, located in the section entitled "OWNER COVENANTS AND AGREES" states "[t]hat [Lawyers Title] is Owner's agent only for the purposes of receiving funds...." These are general promises of those parties.

In paragraph 15, found in the section entitled "[LAWYERS TITLE] COVENANTS AND AGREES," Lawyers Title promises to "hold [First Bank] harmless against any loss" for its failure to use due

---

**2.** The parties mistakenly believe a default judgment was entered against Roy Freiberger before trial. However, Roy Freiberger filed his answer on April 22, 1987.

A memorandum apparently prepared by plaintiffs' counsel dated August 15, 1988, says: "Default & Inquiry granted against defendant Roy Freiberger. Cause set for hearing the 26 day of Sept 1988 at 9:30 in Division 43." Above the line for the judge to sign appears the printed words "SO ORDERED;" those words were stricken and the word "Denied" was inserted. A judge's initials appear on the signature line.

Also, under the date of August 15, 1988, the handwritten Minutes of Proceedings state: "De-fault & Inquiry requested against Deft Roy Freiberger is denied. Attorney notified by phone. Judge P. Sweeney." Judge Sweeney apparently examined the file and noted that Roy Freiberger was not in default.

The Minutes of Proceedings and the Judgment dated September 14, 1990, reflect that judgment was entered against Roy Freiberger and Lawyers Title for $90,500. Roy Freiberger does not appeal. *See Walsh v. Walsh*, 652 S.W.2d 274, 275–76 (Mo.App.E.D.1983); *Brummit v. O'Fallon Bros. Const. Co.*, 671 S.W.2d 441, 442 (Mo.App. E.D.1984).

care in disbursing funds. This promise creates a duty on Lawyers Title in favor of First Bank. Nothing in the paragraph indicates a duty to indemnify homeowners, and they are not mentioned anywhere in the paragraph.

Finally, paragraph 26, found in the section labeled "ALL PARTIES COVENANT AND AGREE" states "that [Lawyers Title] has not been employed and has no responsibility to supervise construction or determine adequacy of design and compliance with plans and specifications...." By the plain terms of the contract, Lawyers Title did not owe homeowners the duty they seek to impose on it.

Homeowners disagree. They link together unrelated segments of the contract to support their contention that the contract (1) is ambiguous and (2) imposes a duty on Lawyers Title in favor of homeowners to determine the work was done in a workmanlike manner. They rely primarily on the portion of paragraph 15 where Lawyers Title promises to "use due care in disbursing funds in accordance with the terms of this Agreement."

The trial court agreed with homeowners' contentions that the term "due care" in paragraph 15 is ambiguous. As a result, the trial court permitted homeowners to present extrinsic evidence.

In addition, homeowners contended the agreement contains paragraphs which aid in determining "due care." For example, they point to paragraph 1, where contractor promised to construct the improvements in a "first-class, workmanlike manner." Therefore, they argued, in order for Lawyers Title to use "due care in disbursing funds," Lawyers Title could only disburse funds after determining the work was done in a workmanlike manner.

Homeowners misread the escrow agreement. Lawyers Title's duties described in paragraph 15 are expressly for the purpose of protecting First Bank—ostensibly from mechanic's lien that would threaten its priority. Homeowners' interpretation of the contract is clearly at odds with other unambiguous paragraphs in the agreement.

Further, paragraph First of homeowners' verdict director required the jury to find that the escrow agreement imposed a duty on Lawyers Title to ascertain "whether work was done in a workmanlike manner according to the construction contract, plans and specifications." However, under the plain terms of the agreement, the parties contracted otherwise. Paragraph 26, found in the section "ALL PARTIES COVENANT AND AGREE," states Lawyers Title "has not been employed and has no responsibility to supervise construction or determine adequacy of design and compliance with plans and specifications." The escrow agreement is not ambiguous as contended.

"Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning." *Edgewater Health Care, Inc. v. Health Systems Management, Inc.*, 752 S.W.2d 860, 865 (Mo.App.E.D.1988). Whether or not a contract is ambiguous is a question of law. *Id.* The escrow agreement is not "reasonably susceptible of more than one construction giving the words [of the contract] their plain and ordinary meaning." *Jim Carlson Constr., Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo.App.W.D.1989).

Under the escrow agreement, Lawyers Title did not owe a duty to homeowners to inspect to insure work was proceeding in a workmanlike manner before disbursing funds. Accordingly, we reverse and enter judgment in favor of Lawyers Title.

CRANDALL and PUDLOWSKI, JJ., concur.